### Hoblitzel v. Jenkins, et al.

(Decided July 1, 1924.)

### Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Constitutional Law—When Business or Occupation May be Prohibited or Regulated.—In exercise of police power, a business or occupation may be prohibited or regulated by government only when its unrestricted pursuit imperils in some degree health, morals, safety, or walfare of public.

2. Constitutional Law—Mere Declaration that Peril Exists in Statute Regulating Occupation Not Conclusive.—Mere declaration by legislature that business or occupation imperils health, morals, safety or welfare of public is not conclusive, but regulatory legislation must have a real relation thereto, and public peril must inhere in nature of occupation itself and not merely in frailties to be expected in some persons who may follow it.

3. Constitutional Law—If there is Any Foundation at all for Regulation of Business Action of Legislature is Conclusive.—If there is any foundation at all for regulation of a business under police power, or any reason for apprehending peril, to public health, morals, safety, or welfare from its unrestricted pursuit, the action of the legislature is conclusive on courts.

4. Contitutional Law—Presumption in Favor of Validity.—There is a presumption in favor of validity of legislation, which is controlling in case of doubt.

5. Licenses—Act Creating State Real Estate Commission and Giving Regulatory Powers Held Lawful Exercise of Police Power.—Laws 1924, creating a state real estate commission, and giving it regulatory powers as to real estate brokers and salesmen, and requiring licenses, held within police power to regulate occupations and businesses whose unrestricted pursuit may imperil public health, morals, safety, or welfare.

6. Licenses—Statute Relating to Regulation of Brokers and Salesmen Held Not Discriminative.—Laws 1924, creating real estate commission, and providing for licensing and regulation of real estate brokers and salesmen, does not unlawfully discriminate in distinction drawn between "brokers" and "salesmen," or in difference in fees required to be paid.

7. Constitutional Law—Licenses—Portion of Act Regulating Real Estate Brokers Limiting Review of Decisions of Real Estate Commission, Held Unconstitutional—That part of section 9 of Laws 1924, limiting remedy upon denial or revocation of real estate broker's or salesmen's license to application to Court of Appeals for review of decision of state real estate commission on questions of law is unconstitutional, especially in view of Constitution, section 110, providing that Court of Appeals shall have only appellate jurisdiction.

8. Courts—Legislature has no Power to Create Court.—Legislature has no power to create a court not provided for in Constitution.

9. Statutes—Provision of Act Regulating Real Estate Brokers Held Not to Render Whole Act Void.—Whole of Laws 1924 creating a real estate commission, and providing for regulation of real estate agents, is not void, because that part of section 9 relating to review of decisions of commission is unconstitutional, as any person aggrieved by action of commission has right to appeal to courts for redress, even though act itself gives no such right.

10. Constitutional Law—Eminent Domain—Statute for Regulation of Real Estate Agents Held Not to Take Property Without Compensation or Without Due Process of Law—Laws 1924, creating real

estate commission, and providing for regulation of real estate agents, does not violate Constitution, section 13, forbidding taking of property without compensation, or Constitution U. S. Amend. 14, relative to due process of law.

HUGO TAUSTINE for appellant.

W. A. PERRY for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming on both original and cross appeals.

This is a proceeding under the Declaratory Judgments Act, and involves the validity of an·act of the General Assembly of 1924, wherein there is created a state real estate commission, and wherein there is defined a real estate broker and a real estate salesman, and giving to such commission certain regulatory powers as to such brokers and salesmen in cities of the first and second classes.

The plaintiffs are a real estate broker and a real estate salesman, while the defendants are the members of the commission appointed by the Governor under authority of the act.

The chancellor below upheld the great body of the act, but declared unconstitutional and void a part of section nine limiting the remedy of an applicant for license whose application had been denied, and that of a licensee whose license had been revoked, to an application to the Court of Appeals for a review of the questions of law involved in the decision of the commission.

The plaintiffs appeal, and the defendants are prosecuting a cross-appeal from so much of the judgment as declares any part of section nine invalid.

The chancellor below in his opinion clearly and accurately analyzes the several contentions of the parties growing out of the provisions of the act, and his conclusions are so logical and so fully in accord with the views entertained by this court, we have concluded to adopt as the opinion of this court his admirable analysis of the act and conclusions of law.

The opinion is as follows:

The act is a long one but, for the purposes of this case, it may be summarized as follows:

In cities of the first and second classes, no person, partnership, association or corporation shall act as broker or salesman of real property without a license

(section 1), A "broker" is one who, for compensation, sells or buys, or offers to do either, or negotiates sales or purchases, or leases, etc., "as a whole or partial vocation," while a "salesman is one who does any of these things under an employment by a 'broker.'" A single act of any of these kinds constitutes the actor a "broker" or "salesman," as the case may be. Section 2 excepts such acts performed by the owner or lessee of the property, as well as by executors, administrators, trustees and receivers.

Section 3 creates the commission, and section 4 provides licenses to be granted "only to persons who bear a good reputation for honesty, truthfulness and fair dealing and are competent to transact the business of a real estate broker or real estate salesman in such a manner as to safeguard the interests of the public."

Section 5 requires written applications for licenses supported by recommendations from owners of real property in the county of applicant's residence, *certifying "that the applicant bears a good reputation for honesty, truthfulness, fair dealing and competency."* Applicant to furnish sworn statements of his present and former places of residence and business, during the past five years, "accounting for such entire period and the length of such residence, together with the name of at least one real estate owner in each of said counties where he may have resided or have been engaged in business." Applicants for salesman's license must also report the length of time, "if any," during which he has engaged in "the real estate business," together with name and address both of last employer and new employer, etc., etc. Every application to be accompanied by bond, with two good sureties, in the sum of $1,000.00, running to the Commonwealth; and the commission may require *"such other proof as may be deemed desirable,* with due regard to the paramount interests of the *public as to the honesty, truthfulness, integrity and competency of the applicant."*

Section 6 requires before refusing a license, the commission shall set the application down for hearing. Section 7 requires licenses and pocket cards to be issued; fees, $10.00 for a broker, $2.00 for a salesman; to be renewed annually; revocation of broker's license automatically revokes licenses of all of his salesmen; change of business location without notice to commission revokes license; salesman's license to be returned by broker (em-

ployer) to commission upon termination of employment, etc., etc.

Section 8 provides for revocation of license by commission, after investigation either on its own motion or on complaint filed, on any of the following grounds: Fraud in obtaining license; "substantial misrepresentation" (*i. e.*, in conduct of business); false promises; "continued and flagrant course of misrepresentation;" false promises through an agent; acting for more than one party without the knowledge of all for whom he acts; accepting recompense as salesman from any but his employer; representing another broker without knowledge and consent of his employer; failing to account for moneys of others within a reasonable time; paying any person for acts in violation of this law; "being unworthy or incompetent to act as a real estate broker or salesman in such manner as to safeguard the interest of the public;" "any other conduct, whether of the same or a different character from that hereinbefore specified, which constitutes improper, fraudulent or dishonest dealing."

Section 9 requires, before denying an application for license or revoking a license, commission to set the matter for hearing, giving ten days' notice to applicant or licensee; latter given right to be heard in person or by counsel, with right to subpoena witnesses. "In the absence of fraud," the finding of fact made by the commission shall be "conclusive," but Court of Appeals given power to review questions of law, upon application of aggrieved party, made within thirty days, "by certiorari, mandamus, or by any other method permissible under the rules and practices of said court, or the laws of this state."

Section 10: Provisions as to non-residents. Section 11: Publication of licenses granted or revoked. Section 12: Penalties provided: Fine of not over $500.00 or imprisonment for not over six months, or both, etc. Sections 13 and 14: Saving and repealing clauses. Section 15: No interference intended with power of cities to tax or license real estate brokers. Section 16: Effective date.

It is contended by plaintiffs that the act is an unconstitutional interference with the liberty of the citizen to pursue any lawful calling. On the other hand, the act is defended as a legitimate exercise of the police power.

(1) It may be safely said that, in the exercise of the police power, a business or occupation may be prohi-

bited or regulated by government only when its unrestricted pursuit imperils, in some degree, the health or morals or safety or welfare of the public. If there is no such peril, the prohibition or regulation is unauthorized.

(2) The mere declaration by the legislature that such a peril exists is not conclusive. The legislation must have a real relation to the public health, morals, safety or welfare. Commonwealth v. Smith, 163 Ky. 227.

(3) The public peril, which alone will justify such legislation must inhere in the nature of the occupation itself, and not merely in the frailties to be expected in some of the persons who may follow it. Tolliver v. Blizzard, Judge, 143 Ky. 773.

In that case it was said:

"In proportion to the severity or extent of the police power must the strict observance of the constitutional limitations upon the police power be required. The test in every case is: Is the prohibition of a particular business or the sale of a particular article necessary to prevent the infliction of a public injury? It is not sufficient that the public sustains harm from a certain trade or employment as it is conducted by some engaged in it. Because many men engaged in the calling persist in so conducting the business that the public suffers and their acts cannot otherwise be effectually controlled, is no justification for a law which prohibits an honest man from conducting the business in such a manner as not to inflict injury upon the public."

That was, however, a case of absolute prohibition (of the sale of any "soft drinks" except five named kinds), and the court proceeded to say that "all sorts of police regulations" might be adopted "to suppress the evil" (of illegal sale of intoxicants), so long as "honest men may be protected in their right to pursue an innocent calling."

(4) Upon the other hand, the policy to be adopted is a matter for decision by the legislature and not by the courts. If there is any foundation at all for the regulation adopted, if the nature of the calling is such that a reason can be given for apprehending a public peril from its unrestricted pursuit, then the action of the legislature is conclusive.

(5)   And there is, of course, a presumption in favor of the validity of legislation which is controlling in case of doubt.

(6)   It is obvious that the sole purpose of the act under examination—certainly its chief purpose—is to insure the probity of all persons permitted to engage in the business of selling or leasing real estate for a compensation. It is true the act refers more than once to the "competency" of licensees, but no means are provided for determining the candidate's competency. Similar licensing regulations are in force in this state as to pharmacists (sec. 2625, Ky. Stats.), attorneys (sec. 98a), embalmers (sec. 1599a), physicians (sec. 2613), dentists (sec. 2636), accountants (sec. 3941e), plumbers (sec. 3037f), and perhaps others. But in each of these instances, competency is the thing chiefly aimed at and in each a test of competency, by examination, is required and provided for.

The "Blue Sky Law" of this state, on the other hand, provides for the licensing of stock and bond "dealers" and that the license of a person "of bad business repute" may be revoked on that ground alone (sec. 883e-11, Ky. Stats.), which it is assumed, implies that an application for license may be denied for the same reason. In the case of Hall v. Geiger-Jones Co. (242 U. S. 539), the Supreme Court upheld the Ohio "Blue Sky Law" and particularly those provisions requiring "good business repute" as a prerequisite to the granting of a license, holding that there was no violation of the Fourteenth Amendment.

In Riley v. Chambers (Cal.), (185 Pac. 855), a statute of California, almost identical with the act under examination here, was upheld by the supreme court of California, as against the same objections as are made here. In that case, the court said: "The single primary purpose of the act is to require of real estate brokers and salesmen that they be honest, truthful and of good reputation." And the court held that to prevent a person engaging in an innocuous and lawful business because of his moral character is not an arbitrary invasion of private rights and liberties, provided the requirement of probity is restricted to occupations in which a lack of probity is, by the very nature of the business, perilous to those who require or seek the services of the practi-

tioner. This, the court found, was particularly true of the real estate business, in which the broker or "agent" occupies a relation to his client of a highly fiducial character.

We think it must be agreed that this is, in large measure, true. If probity may, in any case, be made the solitary qualification for engaging in an occupation (and it seems that it may), then there is sufficient basis for the regulation made by this act.

(7) There appears no unauthorized discrimination in the distinction drawn between "brokers" and "salesmen," or in the difference in the fees required to be paid.

(8) It is objected that the power given the commission to investigate the conduct of licensees and to revoke licenses for misconduct is in violation of the constitutional guaranty of jury trial and of the constitutional separation of the three departments of government.

A question similar to this was considered by the Court of Appeals in cases involving the validity of the Employers' Liability Acts of 1914 and 1916. The first of these acts, which was declared unconstitutional in State Journal Co. v. Workmen's Compensation Board, 161 Ky. 562 (extended opinion, 162 Ky. 387), provided that the decision of the board upon all questions within its jurisdiction should be final, except that the claimant (employee) could within thirty days of the action of the board have a review of a decision denying him any compensation by petition filed in the circuit court. It was provided that such an action should proceed as an ordinary action in such court, with a right of appeal to the Court of Appeals. The act was held unconstitutional on other grounds, but in the extended opinion it was said: "That such an act, to be valid, should make provision for an appeal from the board to a court of competent jurisdiction for review in all cases where compensation is denied or where a less sum is allowed by the board than that claimed by the injured employee."

The Workmen's Compensation Act of 1916 was upheld in the case of Greene v. Caldwell, 170 Ky. 571. In discussing the provisions of this new act, giving an appeal from the action of the board, the court said: "In the 1914 act the right of appeal to the courts by a complaining employee from the decision of the compensation board was so limited as to practically deny any appeal, and to make the judgment of the compensation board

final.'' The court then proceeded to say that the pro-
visions of the new act had remedied this defect. Those
provisions allowed either party to appeal to the circuit
court, with power in the court to reverse the board, (1) if
it had acted without or in excess of its powers, (2) if its
decision was procured by fraud, (3) if its decision was
not in conformity to the provisions of the act or, (4) if
its findings of fact do not support its decision or award.
And the act further gave an appeal to the Court of Ap-
peals in cases where the amount involved was sufficient
for that purpose under existing laws. Although these
provisions appear to make the board's findings of fact
final and conclusive, the court, in commenting on these
provisions, said that the board was ''really nothing more
than an agency created by the legislature for the pur-
pose of assisting the courts on the preliminary findings
of facts that may be necessary in executing the adminis-
trative features of the act.'' ''If,'' said the court, ''the
parties are satisfied with the decision of the board, it
merely acts as a board of arbitration whose judgment is
acquiesced in by the parties who have submitted the mat-
ters in dispute to its settlement; if they are not satisfied
they may appeal to the courts.''

It seems that the right of a person to continue in the
pursuit of his calling is quite as important as the right
of a person to receive compensation for accidental in-
jury. If anything, it is more important. If this is true,
it follows that this right is quite as much entitled to pro-
tection by an appeal to the courts from a decision by an
administrative board or commission created by the legis-
lature. Certainly, the right given by this act to go to
the Court of Appeals, by certiorari or mandamus, and
thus obtain a review by that court of questions of law
involved in the decision of the commission, is not as
ample as the corresponding provisions of the Workmen's
Compensation Act of 1914 which were condemned by the
Court of Appeals.

Under the authority of these cases (Kentucky State
Journal Co. v. Workmen's Compensation Board, 161 Ky.
562; 162 Ky. 387; and Greene v. Caldwell, 170 Ky. 571),
that portion of section nine of the act, which limits the
remedy of an applicant whose application has been de-
nied and of a licensee whose license has been revoked to
an application to the Court of Appeals for a review of
questions of law involved in the decision of the commis-

sion, is unconstitutional and void. And there is, per-haps, another reason for this conclusion. Section 110 of the Kentucky Constitution provides that the Court of Appeals shall have only appellate jurisdiction, except that it shall have power to issue such writs as may be necessary to give it a general control of inferior jurisdic-tions. The power of review attempted to be given by this act to the Court of Appeals cannot be considered as appellate jurisdiction. The contrary conclusion would involve the supposition that the commission created by the act is a court, and it will not be disputed that the legislature has no power to create a court not provided for in the Constitution. Constitution, section 135; Pratt v. Breckinridge, 112 Ky. 1; Greene v. Caldwell, 170 Ky. 571; L. & N. Railroad Co. v. Greenbrier Distillery Co., 170 Ky. 775.

(9) The conclusion announced next above as to the invalidity of that portion of section nine of the act, which gives a power of review exclusively to the Court of Ap-peals, does not affect the validity of the remainder of the act. Section thirteen is a saving clause which provides that, if any provision of the act should be held unconsti-tutional, such decision shall not affect the validity of the remaining portions of the act. This is the sort of case in which such a saving clause may have its intended effect. If we eliminate that provision of the act declared uncon-stitutional, any person aggrieved by the action of the commission would have the right to appeal to the courts for redress, even though the act itself gave no such right.

(10) The last objection made to the validity of the act is that it violates section thirteen of the Kentucky Constitution, which forbids the taking of property with-out compensation, and of the Fourteenth Amendment to the Constitution of the United States, which denies to the states of the union the power to deprive any person of life, liberty or property without due process of law. In view of the cases cited above, and particularly the two cases from the Supreme Court of the United States, this objection cannot be maintained.

It results that the judgment is affirmed both on the original and the cross appeals.

Whole court sitting.