## Rawles v. Jenkins, et al.

(Decided November 10, 1925.)

### Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

1. Constitutional Law—Constitutional Right to Engage in Business or Occupation Subject to Regulations and Restraints Essential to Preservation of Public Weal.—The right to engage in any business or occupation not injurious to the public weal, as conferred by Constitution, section 1, subdivision 5, is not absolute, but is subject to such reasonable regulations and restraints as are essential to the preservation of the health, safety, and welfare of the state.

2. Licenses—State May Regulate Occupations or Businesses Affected with Public Interest or of such Character that, if Unrestrained, will Result in Injuries to Public Weal.—The state may regulate occupations or businesses that are affected with a public interest or which are of such character that, if unrestrained, will result in consequences injurious to the public weal.

3. Licenses—State Exceeds Police Power, when it Requires Moral Qualifications to Engage or Continue in Business no More Dangerous to Public than Any Other Ordinary Occupation of Life.—The state exceeds the limits of its police power, when it undertakes to require moral qualifications of a person who wishes to engage or continue in a business which, as usually conducted, is no more

dangerous to the public than any other ordinary occupation of life.

4. Constitutional Law—Licenses—Statute, so Far as it Makes Ob-- tainment or Retention of Licenses of Real Estate Brokers or Sales- men Depend Upon Moral Fitness of Licensee, Held Unconstitu- tional—"Liberty."—Acts 1924, c. 138, so far as it makes the ob- tainment or retention of a license to transact business of a real estate broker or a real estate salesman depend on the moral fit- ness of the applicant or licensee, is unconstitutional, as violative of Constitution of Kentucky, section 1, subdivisions 1, 5; the word "liberties," as used in such constitutional provisions, including not only the right of a citizen to' earn his livelihood by any law- ful calling, but the right of acquiring property, including the right to engage in any business or occupation that is not injurious to the public weal.

BURWELL K. MARSHALL and W. T. BASKETT for appellant.

ALLEN P. DODD for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

The 1924 license of E. I. Rawles, an employee of the real estate firm of McAlister & Company, was revoked, and his application for a license for the year 1925 was refused by the Kentucky Real Estate Commission.

In this action against I. Sidney Jenkins, Ben A. Adams, and R. A. Elam, composing the Kentucky Real Estate Commission, and the Kentucky Real Estate Com- mission, Rawles sought an injunction requiring the de- fendants to set aside the order revoking the 1924 license and to grant him a license for the year 1925. As the year 1924 had expired, the relief as to the license for that year was denied on the ground that the case was a moot one. The relief asked for the year 1925 was denied on the ground that the evidence before the commission justified its refusal to grant the license.

The application for the 1925 license was made pur- suant to the provisions of chapter 138, Acts 1924. The act requires every real estate broker or real estate sales- man in any city of the first or second class to obtain a license from the Kentucky Real Estate Commission, which is composed of three members appointed by the Governor.

Section 4 of the act provides:

"A license shall be granted only to persons who bear a good reputation for honesty, truthfulness and fair dealing and are competent to transact the busi- ness of a real estate broker or a real estate salesman

in such a manner as to safeguard the interests of the public.''

In addition to numerous other requirements section 5 provides:

"Every applicant for a real estate broker's license shall apply therefor in writing upon blanks prepared or furnished by the Kentucky Real Estate Commission.

"Such application shall be accompanied by the recommendation of at least two citizens, real estate owners, not related to the applicant, who have owned real estate for a period of one year or more, in the county in which said applicant resides, or has his place of business, which recommendation shall certify that the applicant bears a good reputation for honesty, truthfulness, fair dealing and competency, and recommending that a license be granted to the applicant.''

Section 8, which deals with the suspension and revocation of licenses, is as follows:

"The commission may upon its own motion and shall upon the verified complaint in writing of any person, provided such complaint or such complaint together with evidence, documentary or otherwise, presented in connection therewith, shall make out a *prima facie* case, investigate the actions of any real estate broker or real estate salesman, or any person who shall assume to act in either such capacity within this state, and shall have the power to suspend or to revoke any license issued under the provisions of this act, at any time where the licensee has by false or fraudulent representation obtained a license, or where the licensee in performing or attempting to perform any of the acts mentioned herein, is deemed to be guilty of:

"(a) Making a substantial misrepresentation, or

"(b) Making any false promises of a character likely to influence, persuade or induce, or

"(c) Pursuing a continued and flagrant course of misrepresentation, or making of false promises through agents or salesmen or advertising or otherwise, or

"(d) Acting for more than one party in a transaction without the knowledge of all parties for whom he acts, or

"(e) Accepting a commission or valuable consideration as a real estate salesman for the performance of any of the acts specified in this act, from any person, except his employer, who must be a licensed real estate broker, or

"(f) Representing or attempting to represent a real estate broker other than the employer, without the express knowledge and consent of the employer, or

"(g) Failing, within a reasonable time, to account for or to remit any moneys coming into his possession which belong to others, or

"(h) Being unworthy or incompetent to act as a real estate broker or salesman in such manner as to safeguard the interests of the public, or

"(i) Paying a commission or valuable consideration to any person for acts or services performed in violation of this act, or

"(j) Any other conduct, whether of the same or a different character from that hereinbefore specified, which constitutes improper, fraudulent, or dishonest dealing.

"Any unlawful act or violation of any of the provisions of this act by any real estate salesman, employe, or partner or associate of a licensed real estate broker, shall not be cause for the revocation of a license of any real estate broker, partial or otherwise, unless it shall appear to the satisfaction of the commission that said employer, partner or associate has guilty knowledge thereof."

Rawles' application for the 1925 license was in proper form and was accompanied by the necessary affidavits. The application was denied on practically the same ground for which his 1924 license was revoked. In view of the conclusion of the court, it will not be necessary to review the evidence. It is sufficient to say that when the entire transaction out of which the charges grew is carefully analyzed in the light of the exhibits and the conduct of the parties, it is just as probable that Rawles told the truth as it is that those who testified against him gave an accurate account of the transaction. But, be that as it may, the evidence heard has brought

more forcibly to the attention of the court the far-reaching effect of the statute and we are constrained again to take up the question whether the legislature may prescribe moral qualifications for real estate brokers and salesmen and confide to a commission the power to withhold or revoke a license if, in its opinion, the applicant or licensee does not possess such qualifications.

Among the inherent and inalienable rights guaranteed to our citizens by our Bill of Rights are (a) "the right of enjoying and defending their lives and liberties," and (b) "the right of acquiring and protecting property." Constitution, section 1, subsections 1 and 5. Not only does the term "liberty" include the right of the citizen to earn his livelihood by any lawful calling, 6 R. C. L. 260, Allgeyer v. State of Louisiana, 165 U. S. 578, 17 S. Ct. 427, 41 L. ed. 832, but the right of acquiring property includes the right to engage in any business or occupation that is not injurious to the public weal. Lawton v. Stewart Dry Goods Co. 197 Ky. 394, 247 S. W. 14, 26 A. L. R. 686. Of course, this right is not absolute, but is subject to such reasonable regulations and restraints as are essential to the preservation of the health, safety and welfare of the state. State v. Morse, 84 Vermont, 387, 80 Atl. 189, Ann. Cas. 1913B 218, 34 L. R. A. (N. S.) 190. To this end the state may regulate occupations or businesses that are affected with a public interest, or that are of such a character that if unrestrained will result in consequences injurious to the public weal. As one means of protecting the community against the consequences of ignorance and incapacity the state may exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely, to be ascertained by examination or by the possession of a diploma or certificate. In cases of a profession like law or medicine the state, in order to protect the public from the dangerous practices of the "quack" or "shyster," may require that the practitioner possess not only a degree of knowledge and skill, but also a good moral character. Here, it is sought to go further and impose a moral requirement on the real estate agent. It is true that the Supreme Court of California sustained an act containing a similar requirement. Riley v. Chambers, — Cal. —, 185 Pac. 855, 8 A. L. R. 419, and cited in support of its ruling the case of Hall v. Geiger-Jones Co., 242 U. S. 529, 37 Sup. Ct. 217, 61 L. ed. 480, Ann. Cas. 1917C, 643, which upheld the Blue Sky Law of Ohio requiring that every

dealer in securities should be licensed and should establish his good repute to the satisfaction of the superintendent of banks.  In reaching this conclusion the Supreme Court of California took the position that there was no difference between the occupation of a dealer in securities and that of a real estate agent.  It must not be overlooked that the Blue Sky Laws were adopted to meet a great and pressing danger.  The people were annually paying hundreds of millions of dollars for worthless securities whose value they had no means of determining, and were the easy victims of the unscrupulous salesman.  But there is a wide difference between the sale of securities to a customer who has to rely on the representations of the salesman as to their value, and the buying, selling or leasing of real estate which the customer may examine for himself, and which it is not easy to misrepresent.  It is true that the real estate agent sometimes acts in a fiduciary capacity, but not more frequently than every other agent, factor, broker or commission merchant.  It likewise is true that the business sometimes offers opportunities for fraud and imposition, but such opportunities are not nearly so frequent as those offered by every other occupation in which the citizen may engage.  If occasional opportunity for fraud is to be the test, then there is no reason why every grocer, every merchant, every automobile dealer, every keeper of a garage, every manufacturer, and every mechanic who deals more frequently with the public in general, and whose opportunities for fraud are far greater than those of the real estate agent or salesman, may not be put on the same basis.  If that be done then only those who, in the opinion of certain boards or the courts, have the necessary moral qualifications will be permitted to engage in the ordinary occupations of life.  The result will be that all others who fail to establish their moral fitness will not only be deprived of their means of livelihood, but will become a burden either on their families and friends or the community at large.  In our opinion, the right to earn one's daily bread can not be made to hang on so narrow a thread.  Broad as is the police power its limit is exceeded when the state undertakes to require moral qualifications of one who wishes to engage or continue in a business which as usually conducted is no more dangerous to the public than any other ordinary occupation of life.  As said of the real estate agent in Hager, State Auditor v. Walker, 128 Ky. 1, 107 S. W.

254, 15 L. R. A. (N.S.) 195, "The occupation taxed is essentially a harmless one. It has none of the features requiring police regulation, and there is no reason why the police power should be invoked concerning it." Of course, moral fitness on the part of the real estate broker, and every other business man, is a thing greatly to be desired, but, unless the business as ordinarily conducted is unusually dangerous to the public, we shall have to leave something to religious and moral training, to public opinion, and to the ordinary laws of the land. For the reasons given we are constrained to the view that the statute, in so far as it makes the obtainment or retention of a license depend on the moral fitness of the applicant or licensee, is unconstitutional, and to this extent the case of Hoblitzel v. Jenkins, 204 Ky. 122, 263 S. W. 764, is hereby overruled.

It follows that appellant's application for a license was improperly refused and that an injunction should have gone requiring the members of the commission to issue the license.

Judgment reversed and cause remanded for proceedings consistent with this opinion.

Whole court sitting except Judge Dietzman.