## Pittsburgh Water Heater Sales Co. v. State Board of Health of Kentucky et al.

(Decided May 17, 1935.)

CHAS. E. LESTER, Jr., and BLAINE McLAUGHLIN for appellant.

LEE HAMILTON and ROGER L. NEFF, Jr., for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

This suit was instituted in the Campbell circuit court by John D. Scott trading and doing business in Cincinnati, Ohio, under the name of Pittsburgh Water Heater Sales Company, against the State Board of Health and William Attendorn, plumbing inspector for Campbell county, and in charge of the plumbing division of the State Board of Health.

Mr. Scott was conducting the business of distributing and installing water heaters and in January, 1934, entered into a contract with Mrs. Schumacher of Clifton, Ky., for the sale of a water heater. The preliminaries were carried out over the telephone and the contract was accepted by the distributor in Cincinnati, one of the conditions of the sale being that the installation of the heater was a part of or, as is expressed in the pleadings, incident to the sale; that the gross price to Mrs. Schumacher included the placing of the heater in her home complete and ready for use.

After the closing of the contract the distributor sent the heater to Clifton by one of his employees for the purpose of setting it up, and he had about completed the job when the defendant Attendorn appeared on the scene and inquired of the man installing the heater whether or not he was a duly registered plumber. He said he was not, and upon ascertaining that Attendorn was an inspector for the State Board of Health, and upon Attendorn's insistence that he cease operations, he did so.

Thereafter on January 26, 1934, the appellant, suing as above stated, filed his petition in equity in which the facts above stated are alleged. In addition thereto, and for his cause of complaint, he says that while he

was engaged in installing the heater according to his contract, Attendorn, State Plumbing Inspector for Campbell County, "interfered with and prevented plaintiff from completing the installation of said heater * * * acting under his claimed authority of chap. 3099-B of the Acts of the General Assembly for the year 1932, and is threatening to and will remove said heater unless enjoined by order herein, or will prevent and stop plaintiff from completing the provisions of his contract by finishing the installation of said water heater in said residence."

The State Board of Health is made defendant, it being truly alleged that Attendorn is its authorized agent, charged with the enforcement of the Plumber's Act (Acts 1932, c. 140 [Ky. Stats. Supp. 1933, sec. 3909b et seq.]). It is pleaded that one of Attendorn's duties under his claimed authority is to restrict the installation by any person, firm, or corporation of plumbing fixtures or equipment in any residence in Kentucky "other than a regular licensed master plumber or journeyman plumber."

It is then alleged that "said act and the functioning of defendants under said act imposes upon the business of commerce between the states, and particularly the business and commerce transacted by plaintiff," an unreasonable, arbitrary, and unlawful burden, and hence violates the rights of plaintiff to transact freely an interstate business.

It is asserted that plaintiff carries on in the state of Kentucky in the "sale and delivery of water heaters" a large and lucrative business, hence the alleged interference works an irreparable injury without adequate remedy at law. Then follows the usual prayer for a temporary restraining order and perpetual injunction on a final hearing. A temporary restraining order was granted by the court.

On March 5, 1934, the cause was submitted on motion for a temporary injunction which motion was denied. On March 21, 1934, by agreement of the parties the whole case was finally submitted, on the proof theretofore presented on motion for temporary injunction. The court denied the motion for a permanent injunction and dismissed plaintiff's petition, demurrer thereto having been sustained. An appeal was prayed and granted.

An analysis of the proof bears out the allegations of the petition with relation to the sale of the heater to Mrs. Schumacher, and likewise to Attendorn's stopping the further installation by an employee, admittedly neither a master nor journeyman plumber, licensed neither in the state of Ohio or Kentucky. The plaintiff, distributor, is not a plumber.

Mr. Scott testified that he had spent some time in the factory learning how the heater was manufactured, how to put the heater together, and install it. The man who put the heater in for appellant had been trained by him and had been working with him a year, engaged in putting in heaters. He had worked with various plumbers in Cincinnati for about four years. Appellant describes the installation of the heater as follows:

"Well, we have to uncrate the heater, set it in place when the people have decided to have it connected, we cut in the cold water pipe, make our connection to get water for the heater; we then cut in the hot water pipe to make our connection into the hot water line; we cut into the gas line to get gas to operate this heater and we connect the flue pipe to the flue in the house to give the heater proper combustion and ventilation."

Appellant testified that the whole operation took approximately half a day. He also testified to certain matters which indicated that his objection to the employment of plumbers on Kentucky jobs was that their charges were too high, claiming that they wanted to charge a commission for the installation plus the scheduled hourly wages set up in the plumber's code.

On cross-examination he said that the only objection by the defendant to the installation by his employee was that the man who was doing this particular job was not a licensed plumber. It was shown that appellant had written a form letter, sent out to plumbers in Campbell county, in which he offered them his schedule of prices for installation of heaters; but it seems that only one made an agreeable reply. He also admitted that it would be very dangerous to leave the flue pipe off, but insisted that plumbers were just as likely, and more so, to omit this necessary connection as his men would be. Appellant also admitted that when one of his heaters was to be installed it was usually necessary to take

down a heating apparatus; to disconnect the pipes and fittings. Appellant, while insisting that the proper installation of a heater required the service of one skilled in the work, admitted that in making the hot and cold water connections the work could be done by a pipe fitter.

Attendorn, the defendant, called as if on cross-examination, testified that since August, 1930, he had been the plumbing inspector for Campbell county, and that on January 24, 1934, he had stopped the installation of the heater in Mrs. Schumacher's home. He was then questioned on direct examination and said that he had stopped Ray Dankel from further work in the installation of the heater solely because he was not a plumber, licensed under the Kentucky law. He then described the particular heater being put in, estimating that it took twelve to fifteen feet of new water pipe; eight or nine feet of gas pipe; probably five feet of flue pipe, and the necessary joints and elbow connections required about eight to ten fittings. He says that the work is a technical job "from a plumber's standpoint," and that the work done inefficiently would be dangerous to life, and describes the possibility of water contamination and danger from improper flue connections.

On cross-examination it was brought out that the work, partially at least, was a plumber's work, but could be done by a pipe fitter if he had "stood the examination and was registered." Attendorn says he made no further inspection because he was served with a copy of the temporary restraining order.

A copy of the Plumber's Act and a copy of the State Plumbing Code, adopted under the authority and in conformity with the state law in June, 1932, were produced and filed by an officer of the State Board of Health.

The appellant proceeded in the court below on the theory that since the contract was finally accepted by him in the state of Ohio, and the sale carried with it the complete installation, it was protected by the interstate commerce provision of the Federal Constitution (Const. U. S. art. 1, sec. 8, cl. 3). Further, it appears, particularly from the proof of plaintiff, that because he had qualified himself to install the heater, and that he

thought it could not be done properly by a plumber, the transaction came within a class protected by the said interstate commerce clause.

Both of these grounds fail when the test is applied. The fact that a contract is completed in another state, or that the business affairs, to be conducted or carried out, originate in one state and to be completed in another, does not necessarily throw around the transaction the protection afforded by the Federal Constitution.

This court and the Supreme Court of the United States have written voluminously on the exceptions to the rule holding that health and safety laws as passed by the states are passed neither by virtue of nor to thwart the commerce laws, but by virtue of the police power vested in and retained by the various states, a power of sovereignty which has been jealously guarded by the states, and rarely interfered with by the federal courts.

"Regulations for the protection of the public health are within the police power of the state, and are not an illegal interference with interstate commerce, if they have a real substantial relation to a public object which government can accomplish, and are not arbitrary and unreasonable and beyond the necessities of the case." Borden's Condensed Milk Co. v. Board of Health, 81 N. J. Law, 218, 80 A. 30.

In the case of Commonwealth v. Moore, 214 Mass. 19, 100 N. E. 1071, the court upheld the meat cattle inspection law in effect in Massachusetts, though the cattle to be inspected were shipped from another state. In the case of Chicago, Rock Island & Pa. Railway Co. v. Arkansas, 219 U. S. 453, 31 S. Ct. 275, 55 L. Ed. 290, the court, in discussing the full train crew law, held that the state could require the minimum crew, notwithstanding the train was being operated on an interstate journey. The court in that case quoted from the case of Smith v. Alabama, 124 U. S. 465, 8 S. Ct. 564, 567, 31 L. Ed. 508, which involved the validity of a statute of Alabama requiring an engineer in operating a train in that state to be licensed, and the law was upheld, even though the engineer was carrying a train from St. Louis to Mobile. The court used the following language:

"And it may be said, generally, that the legislation

of a state, not directed against commerce or any of its regulations, but relating to the rights, duties, and liabilities of citizens, and only indirectly and remotely affecting the operations of commerce, is of obligatory force upon citizens within its territorial jurisdiction, whether on land or water, or engaged in commerce, foreign or interstate, or in any other pursuit."

See, also, Nashville, C. & St. L. R. Co. v. Alabama, 128 U. S. 96, 101, 9 S. Ct. 28, 32 L. Ed. 352; Globe Elevator Co. v. Andrew (C. C. A.) 156 F. 664; Smith v. St. Louis & S. W. R. Co., 181 U. S. 248, 21 S. Ct. 603, 45 L. Ed. 847, and as to the police power of the state see Harris v. Louisville, 165 Ky. 559, 177 S. W. 472, Ann. Cas. 1917B, 149; Fowler v. Obier, 224 Ky. 742, 7 S. W. (2d) 219; Hoblitzel v. Jenkins, 204 Ky. 122, 263 S. W. 764; Ashland Transfer Co. v. State Tax Comm., 247 Ky. 144, 56 S. W. (2d) 691, 87 A. L. R. 534.

We find no case wherein it is held that laws passed in furtherance of health, safety, or general welfare of the public may not subject the transaction, or the further operation or installation or use of a thing shipped, to the police powers of the state, so long as such laws do not come in conflict with a regulatory law passed by the Congress of the United States on the same subject.

Instances of cases in which it has been held that a contract to build a highly intricate piece of machinery, where the installation was a part of the contract and protected by the commerce clause, are few. In the case of Palmer v. Aeolian Co. (C. C. A.) 46 F. (2d) 746, it was held that since the building of a pipe organ required unusual skill, and wherein it was shown that it could not be installed by any persons other than employees of the manufacturer, the court gave the transaction the protection of the interstate commerce laws, on the ground that because of the intricate and peculiar quality or inherent complexity of the article, an agreement to install it was essential to the accomplishment of the interstate transaction.

As distinguished from the case above, comparison may be had with Browning v. Waycross, 233 U. S. 16, 34 S. Ct. 578, 58 L. Ed. 828, where a lightning rod sale contract called for installation in a state other than the state where the sale was made, General Railway Signal

Co. v. Virginia, 246 U. S. 500, 38 S. Ct. 360, 62 L. Ed. 854, calling for completion of installation of railway signals. In these latter cases it was held that the work was not of such intricate nature that it became absolutely essential that the installation be done by the manufactor, or one of his skilled employees, though it was conceded that the completion of the work demanded expert mechanics.

It may be noted that all these cases turned on the construction of statutes aimed at corporations undertaking to do business in a state other than the home state, without first qualifying to do so, and none involved the construction of laws looking to the health, safety, or general welfare of the public.

In conclusion it may be pointed out that this court has upheld the constitutionality of a plumbing act, of which the one here is a counterpart, and it was approved on the ground that the Legislature has plenary power to regulate the business of plumbing, when in the discretion and opinion of that body it appears necessary for the protection of the health of its citizens. City of Louisville v. Coulter, 177 Ky. 242, 197 S. W. 819, L. R. A. 1918A, 811.

This brings us to the question as to whether or not the work which was being done in Campbell county was of that character which could be classified as plumber's work, and if so whether the provisions of the act of 1932 (chapter 140 [Ky. Stats. Supp. 1933, sec. 3909b et seq.]) and the Code passed for the further carrying out of the act, gave to the Board of Health supervisory powers. From the detailed description given by the witnesses in the case, and observing the exhibits filed, with photographs and explanatory markings thereon, we have no hesitancy in concluding that it is clearly demonstrated that a portion of the work was such as contemplated by the act and the Code, and that the board through its duly authorized inspector had not only the power to inspect, but to see that one doing the work had theretofore complied with the state laws regulating the business of plumbing.

Section 3909b defines the art of plumbing to be, in part, the "installing in buildings the pipes for distributing the water supply, the fixtures for using water, and drainage pipes for removing waste water and sewerage,

together with fittings and appurtenances of various kinds all within or adjacent to the building.'' The same section defines both the master and journeyman plumber; the former being one assuming responsible charge for those under his supervision, and the latter being one who performs the work of installing under the direction of the master. Subsection 1 of the same section (Ky. Stats. Supp. 1933, sec. 3909b-1) requires an examination, and subsequent sections require certification and registration of successful applicants. Subsection 9 (Ky. Stats. Supp. 1933, sec. 3909b-9) provides for the appointment of an inspector and empowers him to carry out the provisions of the act. Another section (section 3909b) provides that any person who assumes charge of any person engaged in doing plumbing work, who is not a registered plumber, does so in violation of the act.

The Code, which appears to have been drawn in conformity with the act, is perhaps more explicit than the act; it is more in detail as to duties and general specifications. Reference to sections 1, 2, and 3, and others, make it very clear that what was being done by the helper of appellant was plumbing.

It is also noted that section 163 of the Code gives specifications as to the installation of water heaters, with particular reference to connections of the hot and cold water pipes, and the proper connection of the vent pipe to the flue.

If time and space permitted, there might be pointed out many portions of the act and Code which lead us to the conclusion that a portion of the work being done by Mr. Dankel on the occasion complained of was work that is and was contemplated by the act and Code, though that appears unnecessary when we can so conclude from the testimony of the witnesses who testified.

It is our conclusion that there was no violation of the laws regulating commerce between the states, and that the board by its agents and servants had the power to see that the state law was not violated by being performed by one who had not complied therewith, and that therefore the court below properly denied the relief sought.

Judgment affirmed.