### STATE v. E. D. WARREN.

(Filed 6 January, 1937.)

**1. Constitutional Law § 13—Statute providing for licensing of real estate brokers in designated counties held unconstitutional as discriminatory.**

Ch. 241, Public-Local Laws of 1927, requiring real estate brokers and salesmen in certain designated counties of the State to be licensed by a real estate commission on the basis of moral character and proficiency

in the public interest, and requiring the payment of a license fee in the designated counties in addition to the State-wide license required by ch. 371, Public Laws of 1935, *is held* unconstitutional as being in contravention of Art. I, sec. 7, of the State Constitution in that it applies only to real estate brokers and salesmen in the designated counties and not to those in the other counties of the State, and is therefore discriminatory. Art. I, secs. 17, 31; Art. V, sec. 3, of the State Constitution; 14th Amendment to the Federal Constitution.

**2. Statutes § 6—**

An act of the General Assembly will not be declared unconstitutional unless plainly and clearly so.

**3. Taxation § 2c—**

While the General Assembly may authorize municipalities to tax trades and professions, it may not impose, in addition to the State-wide license tax, a special tax upon those following a particular trade or profession in certain designated counties while not requiring such tax of others following the same trade or profession in other counties of the State.

DEVIN, J., dissenting.

SCHENCK, J., concurs in dissenting opinion.

APPEAL by defendant from *Harris, J.,* at September Special Criminal Term, 1936, of GUILFORD. Reversed.

The defendant was found guilty and sentenced for violating chapter 241, Public-Local Laws of 1927, to wit: "An Act to define, regulate, and license real estate brokers and real estate salesmen; to create a State real estate commission and to provide a penalty for a violation of the provisions hereof," applicable to certain designated counties—8 in number. The defendant contends that the act is unconstitutional.

*Attorney-General Seawell and Hoyle & Hoyle, amicus curiæ for the State.*

*F. F. Myrick for defendant.*

CLARKSON, J. The sole question involved in this appeal: Is the act in controversy unconstitutional? We think so.

The Constitution of N. C., Art. I, sec. 7, is as follows: "No man or set of men are entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services." Art. I, sec. 17: "No person ought to be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." Sec. 31: "Perpetuities and monopolies are contrary to the genius of a free state and ought not to be allowed." Art. V, sec. 3: "Taxation shall be by uniform rule and *ad valorem,* with certain exemptions." 14th Amendment to the Constitution of the U. S.

In Public Laws, 1935, chapter 371, we find under License Taxes, sec. 100, p. 450, the following: "Taxes in this article or schedule shall be imposed as a State License Tax for the privilege of carrying on the business, exercising the privilege, or doing the act named, and nothing in this act shall be construed to relieve any person, firm, or corporation from the payment of the tax prescribed in this article or schedule."

Section 109, in part: "Every person, whether acting as an individual, as a member of a partnership, or as an officer and/or agent of a corporation, who is engaged in the business of selling or offering for sale, buying or offering to buy, negotiating the purchase, sale, or exchange of real estate, or who is engaged in the business of leasing or offering to lease, renting or offering to rent, or of collecting any rents as agent for another for compensation, or who is engaged in the business of soliciting and/or negotiating loans on real estate as agent for another for a commission, brokerage and/or other compensation, shall apply for and obtain from the Commissioner of Revenue a State-wide license for the privilege of engaging in such business or profession, or the doing of the act named, and shall pay for such license twenty-five dollars ($25.00)."

The above is a State-wide act, and a State-wide license is issued to the real estate salesmen, applicable to the whole State. The act in controversy, chapter 241, Public-Local Laws of 1927, sec. 1, in part is as follows: "On and after May first, one thousand nine hundred and twenty-seven, it shall be unlawful for any person, copartnership, association, or corporation to act as a real estate broker or real estate salesman, or to advertise or assume to act as such real estate broker or real estate salesman without a license issued by the North Carolina Real Estate Commission. No copartnership, association, or corporation shall be granted a license unless every member or officer of such copartnership, association, or corporation who actively participates in the brokerage business of such copartnership, association, or corporation shall hold a license as a real estate broker, and unless every employee who acts as a salesman for such copartnership, association, or corporation shall hold a license as a real estate salesman." The contents of the act: Sec. 3, Creation of commission, details of same; Sec. 4, Qualifications for license; Sec. 5, Application for license; Sec. 6, Procedure when license is refused applicant; Sec. 7, Details relating to license; Sec. 8, Suspension or revocation of license for causes enumerated; Sec. 9, Provision for hearing before application is refused or license suspended or revoked; Sec. 10, Nonresident brokers and salesmen; Sec. 11, Publication of list of licenses; Sec. 12, Penalties; Sec. 13, Saving clause; Sec. 14, Repealing clause; Sec. 15, Interpretation of act; Sec. 16, Date effective; Sec. 17: "This act shall apply only to the counties of Buncombe, Durham, Forsyth, Guilford, Henderson, Lee, Rowan, and Wake." Some counties

have been withdrawn from the act and some added. It is operative in only a few counties of the State.

In sec. 3 is the following: "All fees and charges collected by the commission under the provisions of this act shall be paid into the general fund in the State Treasury. All expenses incurred by the commission under the provisions of this act, including compensations to members, secretaries, clerks, and assistants, shall be paid out of the general fund in the State Treasury upon warrants of the State Auditor from time to time when vouchers therefor are exhibited and approved by the commission: *Provided,* that the total expense for every purpose incurred shall not exceed the total fees and charges collected by the commission."

Section 4: "A license shall be granted only to persons who bear a good reputation for honesty, truthfulness, and fair dealing, and are competent to transact the business of a real estate broker or a real estate salesman in such a manner as to safeguard the interests of the public." The act provides for suspension or revocation of license on its own motion or upon written complaint for 10 reasons—setting them forth.

It has long been settled in this State that under the police power of the State to protect the health, comfort, safety, and welfare of the people, general acts have been passed and held constitutional, relating to professions and trades that require skill, learning, and training; such as attorneys at law, physicians, dentists, surgeons, accountants, osteopaths, chiropractors, opticians, cosmetologists, barbers, plumbers, etc. *Roach v. Durham,* 204 N. C., 587; *Allen v. Carr,* 210 N. C., 513.

If the present act in controversy were applicable to the whole State we are not called upon here to decide the constitutionality of same.

In *Rawls v. Jenkins,* 212 Ky., 287 (279 S. W., 350), at p. 292, it is said: "If occasional opportunity for fraud is to be the test, then there is no reason why every grocer, every merchant, every automobile dealer, every keeper of a garage, every manufacturer, and every mechanic who deals more frequently with the public in general, and whose opportunities for fraud are far greater than those of the real estate agent or salesman, may not be put on the same basis. If that be done, then only those who, in the opinion of certain boards or the courts, have the necessary moral qualifications will be permitted to engage in the ordinary occupations of life. The result will be that all others who fail to establish their moral fitness will not only be deprived of their means of livelihood, but will become a burden either on their families and friends or the community at large. In our opinion, the right to earn one's daily bread cannot be made to hang on so narrow a thread. Broad as is the police power, its limit is exceeded when the State undertakes to require moral qualifications of one who wishes to engage or continue in a business which as usually conducted is no more dangerous to the public

than any other ordinary occupation of life. As said of the real estate agent in *Hager, State Auditor, v. Walker,* 128 Ky., 1, 107 S. W., 254, 15 L. R. A. (N. S.) 195, 'The occupation taxed is essentially a harmless one. It has none of the features requiring police regulations, and there is no reason why the police power should be invoked concerning it.' Of course, moral fitness on the part of the real estate broker, and every other business man, is a thing greatly to be desired, but, unless the business as ordinarily conducted is unusually dangerous to the public, we shall have to leave something to religious and moral training, to public opinion, and to the ordinary laws of the land. For the reasons given we are constrained to the view that the statute, in so far as it makes the obtainment or retention of a license depend on the moral fitness of the applicant or licensee, is unconstitutional."

On the other hand, general State acts of this nature have been held constitutional. In *Bratton v. Chandler,* 260 U. S., 110, 68 Law Ed., 157, a State-wide act of Tennessee is upheld. *Roman v. Lobe,* 243 N. Y., 51, 152 N. E., 461; 50 A. L. R., p. 1329 *et seq.*

In this State, certain Public-Local acts have been held constitutional, as in *S. v. Moore,* 104 N. C., 714; *S. v. Blake,* 157 N. C., 608, and cases cited therein, but these matters were local in their nature. The sale of real estate is a business applicable to the whole State, and the State licenses those engaged in the business and issues them a "State-wide license." The State can, no doubt, in a State-wide act, make reasonable regulations in regard to the real estate business. Those desiring real estate licenses to do business have to obtain same from the State, and in addition those living in these counties, under the act in question, must obtain additional licenses and are subject to an act which, to say the least, is burdensome and discriminatory, before they can sell real estate. We think the act unconstitutional. Real estate dealers who have licenses from the State are not confined to any particular county in the State to do business. Attorneys at law, physicians, etc., are not confined to any particular county to practice their profession in the State. Suppose certain counties would set up, as the present act does for real estate dealers, that attorneys at law, physicians, etc., could not practice their professions unless complying with the terms of a special act like the one in controversy, we would unhesitatingly say that the act was unconstitutional—as we do in this case. Acts of the General Assembly ought not to be declared unconstitutional unless plainly and clearly so. *Glenn v. Board of Education,* 210 N. C., 525. Of course, the General Assembly can confer power on municipalities to tax trades, professions, etc. *Hilton v. Harris,* 207 N. C., 465.

For the reasons given, the judgment of the court below is
Reversed.

STATE *v.* WARREN.

DEVIN, J., dissenting: The majority opinion bases its reversal of the judgment of the court below on the sole ground that the statute under which the defendant was convicted is unconstitutional.

This statute imposes a license fee of ten dollars for carrying on the business of a real estate broker, and five dollars for that of real estate salesman, with regulations for determining the qualifications therefor, under the direction of a real estate commission, "in such a manner as to safeguard the interests of the public."

It is axiomatic that since all political power is derived from the people and all government originates from them (Const. N. C., Art. I, sec. 2), the sovereign power of the people, expressed through their chosen representatives in the General Assembly, is supreme, and a law by them enacted may not be set aside by the courts unless it contravenes some prohibition or mandate of the Constitution by which the people of the State have elected to be limited and restrained, or unless it violates some provision of the granted powers contained in the Constitution of the United States.

It is equally well settled that no act of the General Assembly ought to be declared violative of any constitutional provision unless the conflict is so clear that no reasonable doubt can arise. *Coble v. Comrs.,* 184 N. C., 342; *Gunter v. Sanford,* 186 N. C., 452; *S. v. Yarboro,* 194 N. C., 498; *Plott v. Ferguson,* 202 N. C., 446; *Glenn v. Board of Education,* 210 N. C., 525.

It seems to be conceded that chap. 241, Public-Local Laws of 1927, would be constitutional if it were made applicable to the entire State. Similar statutes have been enacted in many of the states and their constitutionality upheld by an almost unbroken line of decisions of the state courts and by the Supreme Court of the United States. *Bratton v. Chandler,* 260 U. S., 110; *Roman v. Lobe,* 243 N. Y., 51; *Riley v. Chambers,* 181 Cal., 589.

It is uniformly held that requirements of license fees from real estate brokers and regulations subjecting those of that profession or business to tests of character and competency in the interest of the public are within the power of State Legislatures. Cooley Const. Lim. (8th Ed.), p. 1332.

In an illuminating opinion by *Cardozo, J.,* in *Roman v. Lobe,* 243 N. Y., 51, 50 A. L. R., 1329, the reasons therefor are clearly stated, as follows:

"The intrinsic nature of the business combines with practice and tradition to attest the need of regulation. The real estate broker is brought by his calling into a relation of trust and confidence. Constant are the opportunities by concealment and collusion to extract illicit gains. . . . With temptation so aggressive, the dishonest or un-

trustworthy may not reasonably complain if they are told to stand aside. No less necessary are safeguards against the perils of incompetence. The business of the broker is distinct from occupations which by general acquiescence are pursued by common right without regulation or restriction."

The acts of the legislatures of many states are cited and the decisions of the courts sustaining them are noted in *Roman v. Lobe, supra.*

In the statute under consideration it clearly appears that the license fee of ten dollars and the regulations to secure honesty, truthfulness, integrity, and competency are "enacted with due regard to the paramount interests of the people." Statutes, held by this Court to be valid, have been enacted in North Carolina, requiring license fees and establishing regulations and governing boards with respect to many professions, businesses, and callings; physicians, lawyers, dentists, osteopaths, chiropractors, barbers, cosmetologists, pilots, engineers, druggists, accountants, plumbing and heating, callings affecting the public and requiring honesty and proficiency. *S. v. Van Doran,* 109 N. C., 864; *S. v. Call,* 121 N. C., 643; *S. v. Hicks,* 143 N. C., 689; *S. v. Siler,* 169 N. C., 314; *S. v. Scott,* 182 N. C., 865; *S. v. Lockey,* 198 N. C., 551; *Roach v. Durham,* 204 N. C., 587.

Does the act, then, valid as applicable to the whole State, become invalid because it applies only to certain designated counties and does it for that reason offend against Art. I, sec. 7, of the Constitution of North Carolina? In my opinion the decisions of this Court authoritatively construing this section of the Constitution do not sustain the view expressed by a majority of this Court in this case.

Speaking of laws applicable to particular localities or particular classes, *Judge Cooley* says: "If the laws be otherwise unobjectionable, all that can be required in these cases is that they be general in their application; and they are then public in character, and of their propriety and policy the Legislature must judge." Cooley Const. Lim. (8th Ed.) pp. 806-807; *Kornegay v. Goldsboro,* 180 N. C., 441.

"It (the Constitution) does not prohibit legislation which is limited either in the objects to which it is directed or by the territory within which it is to operate. It merely requires that all persons subject to such legislation shall be treated alike under like circumstances and conditions, both in privileges conferred and liabilities imposed." Cooley Const. Lim. (8th Ed.), pp. 824-825.

"Laws public in their object may, unless express constitutional provisions forbid, be either general or local in their application. The Legislature must determine whether particular regulations shall extend to the whole State or to a subdivision of the State." Cooley Const. Lim. (8th Ed.), pp. 803-804.

In *S. v. Moore,* 104 N. C., 714, *Judge Avery,* speaking for the Court, uses this language: "Public-local laws, if they operate uniformly and subject all persons, who come within the defined locality and violate their provisions, to indictment in the same way and to the same punishment, are not repugnant to the Constitution of North Carolina. *S. v. Muse,* 20 N. C., 463; *S. v. Chambers,* 93 N. C., 600. But the objection that the prohibition is restricted to particular counties is met by the decisions of this Court more directly in point. *S. v. Joyner,* 81 N. C., 534; *S. v. Stovall,* 103 N. C., 416; *Intendant v. Sorrell,* 46 N. C., 49."

To make a statute a public law of general obligation, it is not necessary that it should be equally applicable to all parts of the State. All that is required is that it shall apply equally to all persons within the territorial limits described in the act. *Power Co. v. Power Co.,* 175 N. C., 668; *S. v. Barrett,* 138 N. C., 630.

In *S. v. Barrett, supra, Connor, J.,* speaking for the Court, uses this language: "This power (to pass statutes of local application) has been so long recognized by the Court and exercised by the Legislature that we do not deem it necessary to examine the foundations upon which it rests."

"Legislation, which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the Amendment (14th Amendment to Const. of U. S.). *Barbier v. Connolly,* 113 U. S., 32. It merely requires that all persons subject to such legislation shall be treated alike. *Hayes v. Missouri,* 120 U. S., 71." *Broadfoot v. Fayetteville,* 121 N. C., 418.

When every citizen, who comes within the sphere of its operation, is alike amenable for violation of its provisions, an act could not be declared void on the ground that it abridged the privileges or immunities of citizens of the United States in violation of the Constitution of the United States. *Missouri v. Lewis,* 101 U. S., 22; *Mugler v. Kansas,* 123 U. S., 663; *S. v. Moore, supra; Colgate v. Harvey,* 296 U. S., 404.

In *S. v. Joyner,* 81 N. C., 537, it is said: "The law, local in its application, and clear and positive in its mandates, cannot be controlled by provisions and restraints found in similar enactments, general or special, passed for the regulation or prohibition of the traffic in other parts of the State, and must be enforced upon a fair and reasonable interpretation of its own terms. Nor is the competency of the legislature to pass local acts, such as the present, now an open question. The power has been so long and so often exercised and recognized in cases coming before this and other courts, that its existence must be considered as settled." *S. v. Blake,* 157 N. C., 608; *Newell v. Green,* 169 N. C., 462.

It is only when persons engaged in the same business are subjected to different restrictions or are held entitled to different privileges under the

same condition can the discrimination be said to impair that equal right to the protection of the laws. *S. v. Denson,* 189 N. C., 173; *Soon Hing v. Crowley,* 113 U. S., 703.

It was said in *S. v. Blake, supra:* "Public-local acts passed in the exercise of the police power, which apply only to certain localities, are valid." And *Clark, C. J.,* cites many cases in which it has been so held by this Court. *S. v. Barringer,* 110 N. C., 526; *S. v. Snow,* 117 N. C., 774; *Harriss v. Wright,* 121 N. C., 173; *Lyon v. Comrs.,* 120 N. C., 237; *McCormac v. Comrs.,* 90 N. C., 441; *Guy v. Comrs.,* 122 N. C., 471; *Tate v. Comrs.,* 122 N. C., 812; *Lumber Co. v. Hayes,* 157 N. C., 333.

In Connor and Cheshire's Constitution of North Carolina we find on p. 14 this expression of the law: "A public-local act, making that an offense in one district which is not an offense in another, is a constitutional exercise of the police power and not in violation of Art. I, sec. 7, if it bears alike on all persons in a defined locality," citing *S. v. Stovall,* 103 N. C., 416, and *S. v. Moore, supra.*

There have been some decisions of this Court apparently stating a contrary view, but the opinions in those cases should be interpreted in the light of the facts upon which the statement of applicable law was based.

In *S. v. Fowler,* 193 N. C., 290, it was held that the Legislature could not make the punishment for an offense, which had been defined by a State-wide act, different in one county from that of another.

In *S. v. Divine,* 98 N. C., 778, an act making the officials of a railroad indictable in certain counties for cattle killed by its cars was held invalid, but not because the act was applicable to certain counties only.

In *Plott v. Ferguson,* 202 N. C., 446, an act relating to one county requiring that the sureties on contractors' bonds be confined to corporations licensed to do business in North Carolina was held invalid, and to the same effect was *S. v. Sasseen,* 206 N. C., 644, where the act required taxicab operators to file policy of liability insurance with a reliable company.

In the instant case, since the license fee of ten dollars fixed by the statute is uniform on all real estate brokers in the named counties, this provision cannot be said to violate the rule of uniformity ordained in Art. V, sec. 3, of the Constitution. *Roach v. Durham, supra.*

The statute in its general terms and purposes does not, in my opinion, violate any constitutional provision, and it is not rendered invalid because its sphere of operation is limited to certain counties, since its provisions affect all real estate brokers and salesmen alike within the territory defined.

SCHENCK, J., concurs in dissenting opinion.