## Lawton, et al. v. Stewart Dry Goods Company.

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division.)

## Lawton, et al. v. United Cigar Stores Company of America.

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

## Commonwealth v. United Cigar Stores Company.

Appeal from Fayette Circuit Court.

## Ware, et al. v. The Sperry & Hutchinson Company.

Appeal from Kenton Circuit Court
(Common Law and Equity Division.)

(Decided January 23, 1923.)

Constitutional Law—Police Power—Act Prohibiting Trading Stamps Invalid.—The act of 1922 (c. 131, Acts 1922) prohibiting trading stamps and the trading stamp business is an unlawful exercise of the police power, and therefore invalid.

ARTHUR B. BENSINGER, ALFRED SELLIGMAN and WILLIAM A PERRY for appellant Lawton.

CHARLES H. MORRIS, MORRIS & JONES, HUMPHREY, CRAWFORD & MIDDLETON for appellee, Stewart Dry Goods Co.

CHARLES H. MORRIS, MORRIS & JONES, DAVID B. BAUM and S. T. STROOCK & STROOCK for United Cigar Stores Company of America.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for Commonwealth.

ORIE S. WARE and EDW. J. TRACY for appellant, Ware, &c.

ROBERT C. SIMMONS and FRANK T. WOLCOTT of New York for appellee, The Sperry & Hutchinson Co.

OPINION OF THE COURT BY JUDGE CLAY—Affirming in each case.

The suits resulting in these appeals, which were heard together and will be considered in one opinion, were brought for the purpose of testing the validity of the anti-trading stamp act, enacted at the last session of the General Assembly and found in chapter 131, Acts 1922. The material provisions of the act may be condensed and stated as follows:

Section 1 defines "trading stamps" to be any stamp, coupon, ticket, certificate, label, etc., which entitles the holder to receive in whole or in part any gift, prize, money or article of merchandise. It further defines the term, "trading stamp company," as any person, firm or corporation that is engaged in the business of issuing, distributing, selling or furnishing to merchants or to any other person trading stamps, which such merchant or other person furnishes or gives away to his customers with purchases or sales of goods, wares or merchandise, or in connection with work, services or labor performed for reward or compensation, and declares it to be immaterial whether such stamps are redeemed in money or merchandise by the trading stamp company, or by the merchant or person who gives them to his customer, or by any other person.

Section 2 makes it unlawful for any trading stamp company or other person, firm or corporation to issue, distribute, give, sell, furnish, supply to, or procure for any merchant or other person in this Commonwealth, trading stamps to be distributed, used or given away by such merchant or other person, with, for or in connection with the sale of goods, wares or merchandise by such merchant, or work, labor or services rendered or performed for reward or compensation by such person. It also makes it unlawful for any such trading stamp company, or other person, firm or corporation to redeem trading stamps or to hold itself out as ready and willing to redeem trading stamps except as provided in section 6 of the act.

Section 3 makes it unlawful for any merchant or other person to issue, sell, vend, distribute, furnish or give away trading stamps in connection with the sale of any goods, etc., or work, labor or services of any kind performed or rendered for reward or compensation, etc., or by reason of the payment of such merchant or other person of any bill, account, or moneys due or owing to such merchant or other person. It also makes it unlawful for any such merchant to redeem trading stamps or to hold himself out as ready and willing to redeem trading stamps except as provided in section 6. It further provides, however, that nothing in the act should prohibit any merchant or person from giving or allowing a discount in cash in payment for the purchase of any goods, etc., provided the discount is allowed at the time of the sale or payment.

.    Section 4 makes it unlawful for any person to accept or receive trading stamps from any merchant in connection with, or by virtue of the purchase of any goods, etc.

.    Section 5 makes it unlawful for any newspaper, magazine, sheet or periodical published and circulated in this Commonwealth to print or publish therein any advertisement of any trading stamp company, or any advertisement of, or any announcement by, any person indicating that such person gives or redeems, etc., trading stamps, or. to print, advertise, circulate or publish any matter, announcement, symbol. or statement. concerning the use, sale, distribution or redemption of trading stamps, except as provided in section 6.

. Section 6 permits the redemption during a period of ninety days of trading stamps that have been issued and were outstanding when the act took effect.

Section 7 fixes the penalty for a violation of the act.

Section 8 provides immunity for witnesses in prosecutions under the act.

Section 9 provides that if any section, provision or clause is held unconstitutional, it shall not affect the other provisions of the act.

·Section 10 contains the proviso that the act shall not apply to the issuance and redemption by manufacturer, dealer, packer of coupons, cards or other devices contained in wares or merchandise, or attached to the original package of his goods, wares or merchandise, and directly redeemable by such manufacturer, nor to the sale of such goods, wares or merchandise.

The act is challenged on the ground that it is not a valid exercise of the police power, and that is the only question which we deem it necessary to consider.

The difference between the savage and the civilized man is due in no small degree to the fact that the former provides only for the moment, while the latter provides for the morrow. Indeed, the ownership of property is always an incentive to good citizenship, and good citizenship always contributes to good government, and therefore to the welfare and happiness of man. Appreciating this truth, the framers of our Constitution were careful to place in the Bill of Rights the following provision:

"Section 1. All men are, by nature, free and equal, and have certain inherent and inalienable rights, among which may be reckoned:

"5. The right of acquiring and protecting property."

Clearly the right of acquiring property is not con-fined to cases of gift or inheritance, but carries with it as a necessary and inseparable incident the right to engage in any business or occupation that is not injurious to the public weal. Therefore, when it is sought, as in this case, not merely to regulate by reasonable restrictions, but absolutely to prohibit, a particular business, the act cannot be sustained, if, after the ingenuity of man has been strained to the utmost, it appears that all reasons assigned for the exercise of the power are merely fanci-ful, and such that if the doctrine be carried to its logical extent, no business will be safe from legislative inter-ference. With these principles in mind, let us examine the "potential evils" connected with the trading stamp, or premium system.

In the first place it is said that the trading stamp or premium system encourages profligate and wasteful buy-ing and operates as a lure to improvidence. As a matter of fact it is simply a convenient method of allowing a dis-count for cash. Therefore, it encourages cash buying and operates as an incentive to prudence and economy. But let us assume that it is a lure to improvidence. Have we reached the point where the prohibition of every busi-ness that leads to improvidence may be regarded as a proper governmental function? Nothing is more allur-ing to the purchaser than an attractive advertisement or a beautiful show window, but it cannot be said that the merchant who employs such means to increase his profits may be put out of business because, perchance, some one may see the advertisement or look in the window and be induced to buy when he cannot afford to do so? If so, how far may the doctrine be carried? Why not prohibit all forms of advertising and the sale of all articles of lux-ury on the ground that they lead to extravagance? Why not require every merchant to restrict his stock to over-alls or cotton dresses so as to reduce the "lure" to a min-imum?

Another objection is that the trading stamp intro-duces into business a middleman who receives a profit not only from the stamps sold, but from those that are not redeemed, and thereby adds to the cost of the article. If the middleman may be dispensed with, what is to be-come of all agents, factors, brokers and commission mer-chants? Indeed, why not go all the way and prohibit not only all retail merchants, but all wholesale merchants

and jobbers, and compel everybody to buy directly from the manufacturer? But it is said that some of the coupons are not redeemed. Doubtless, that is true in some instances, but there are millions of dollars on deposit in our banks which have never been claimed, and that fact furnishes no reason for prohibiting the banking business.

Another alleged evil is that the trading stamp or premium gives opportunity for fraud in values and prices. It is true that one may use the trading stamp or premium dishonestly, just as he may be dishonest in other respects, but we fail to see wherein the use of the trading stamp or premium affords any greater opportunity for fraud than already exists. Indeed, all business affords an opportunity for fraud in values and prices, but a business that may be honestly conducted should not be prohibited because of the dishonesty of some who are engaged in the business.

Another contention is that the trading stamp gives opportunity for coercion in that merchants are compelled to buy in order to compete with their rivals. Doubtless, the trading stamp company may ask one merchant to buy its stamps on the ground that his competitors have bought or intend to buy, but that is not a form of coercion of which the law will take notice. The same method of making sales is followed by all business houses, particularly the wholesalers who desire to introduce some novelty or a new line of goods, and if the legislature, undertook to prohibit every business whose agents indulged in the practice of arousing a spirit of rivalry among their customers, the channels of trade would soon be closed.

A still further complaint is that the trading stamp gives an advantage to large concerns, and thereby stifles competition. The trading stamp does not contribute in any way to the advantage which the large concern has over the small concern. That advantage comes from the fact that it buys in larger quantities, discounts its bills for cash, and is therefore able to sell at a cheaper price, regardless of whether it uses trading stamps or not. Moreover, if a particular method of doing business may be prohibited in the interest of the smaller concern, why not go to the very root of the matter and prohibit the large concern altogether, on the ground that it enjoys a distinct advantage over the smaller concern?

Some stress is placed on the contention that the trading stamp or premium is a system of deceit in that it

.distracts attention from the quality and price of the article bought, and from the fact that the discount stamp is added to the cost. It is said that the ideal trade condition is a market which depends directly on the price and quality of commodities of which the public is informed; that the consumer is best served when he knows what he pays for an article and knows the relative quality of the articles offered him; that both of these factors are obscured by the trading stamp, thus introducing a side issue which operates as an incentive to buy, and tends to distort and react against the interests of both the purchaser and the merchant. We are unable to find any basis whatever for this contention. As a matter of fact, the customer goes into the store, selects the article he wishes to buy, knows that he will receive a certain discount for cash, and there is nothing whatever to distract his attention from the real price of the article. But let us assume that the customer's attention is distracted. Surely the government should hesitate a long while before it undertakes to enter the domain of psychology and invoke the police power in every case where the attention of some one may be distracted. Otherwise, the drug store phonograph and the hotel orchestra will soon be things of the past, because the legislature has concluded that they play a dangerous part in the economic life of the people in that they frequently distract some young lady's attention from the price of a puff box, or cause some farmer's mind to wander while he is perusing the bill of fare.

But perhaps the main argument in support of the act is that we must presume that the legislature had before it sufficient facts to justify its action, and that something must be wrong with the trading stamp or premium system because the legislatures of so many states have enacted similar statutes. It is true every act of the legislature is presumed to be valid, but the presumption is not conclusive. If it were, the Constitution could be violated with impunity. These cases have been well prepared and ably argued. Every fact, every argument, every reason, every objection and every suggestion that could be urged against the trading stamp or premium system has been laid before us. Our information, therefore, is quite as complete as that possessed by our own legislature, or the legislature of any other state. That being true, we cannot shut our eyes and give effect to a mere presumption, or assume the existence of some "po-

tential evil'' that astute counsel failed to mention. After a careful consideration of every phase of the question, we see no reason to depart from the rule announced in Sperry & Hutchinson Co. v. City of Owensboro, 151 Ky. 389, 151 S. W. 932, but are constrained to agree with the three learned circuit judges who decided these cases, as well as with the majority of the courts of the country, and hold that the act cannot be sustained as a lawful exercise of the police power.

Doubtless, some merchants will be disappointed in this decision, but with the growth of paternalism, and the development of ''blocs,'' whose members fail to grasp the significance of the principle that our government was created for the common good and not for their peculiar benefit, who can say that the time will never come when the consumers of the country will combine for the purpose of prohibiting the business of all commission and retail merchants on the ground that they play an unnecessary part in the channels of trade and add to the cost of living? If so, those who are disappointed now will not be disappointed then, for the Constitution will raise its protecting hand and justify the faith of those who love it.

The judgment in each case is affirmed.

Whole court sitting.