## Orie S. Ware, Commonwealth's Attorney, et al. v. A. P. Ammon, Doing Business Under the Firm Name and Style of The Brown Dry Cleanery.

(Decided December 18, 1925.)

Appeal from Kenton Circuit Court.
(Common Law and Equity Division).

1. Licenses—Act Not Sustained as to One Doing Work as a Dyer and Dry Cleaner through Establishment Conducted by Another on Ground that it was to Prevent False Advertising.—Acts 1922, chapter 125, section 2, providing that no one shall advertise as dry cleaner and dyer as defined in section 1, until he shall have made

application to state fire marshal for permission to engage in such business, and paid fee therefor, cannot be sustained as to one doing work through establishment conducted by another on ground that it was enacted to prevent false advertising, since advertisement that one is a cleaner and dyer is not necessarily false merely because he does the work through another.

2.  Statutes—Statute Against False Advertising should be General in Character.—A statute against false advertising should be general in character, and cannot be sustained where it is confined to one particular business to the exclusion of others.

3.  Constitutional Law—Right to Earn Livelihood Protected by Constitutions.—No right of citizens is more valuable than right to earn livelihood in any lawful occupation, and right thereto is protected alike by federal and state Constitutions.

4.  Constitutional Law—Right to Carry on Lawful Business Subject to Regulation Under Police Power.—The right to carry on lawful business is subject to regulation under the police power, which power, however, is not unlimited.

5.  Constitutional Law—To Sustain Legislative Interference with Business, Act Must Promote Public Health, Morals, Safety or Welfare.—To sustain legislative interference with the business of the citizen, the court must be able to see that the act tends in some degree to promote the public health, morals, safety or welfare, and means adopted must be reasonably necessary to accomplish that purpo, and should not be unduly oppressive.

6.  Constitutional Law—Legislative Determination as to Right to Interfere with Business Not Conclusive.—Since to sustain legislative interference with business of citizen act must promote public health, morals, safety or welfare, legislative determination as to such matters is not conclusive, but is subject to court's supervision, and if the prerequisites are wanting, a law imposing unreasonable restrictions on lawful occupation will be held void.

7.  Licenses—Act Held Void as to Person Advertising as Dry Cleaner and Dyer, but Transmitting Work Received to Others for Cleaning.—As purpose of Acts 1922, chapter 125, is to regulate the places and manner of carrying on the business of dry cleaning and dyeing in such a way as to prevent destruction of life and property by fire, it is purely a police measure enacted for public safety, and section 2 thereof, providing that no one shall advertise such business without having made application to the fire marshal for permission and paid fee therefor, is void as against person advertising such business, but who merely transmits clothing received for cleaning and dyeing elsewhere.

EDWARD J. TRACY and GUY H. BRIGGS for appellants.

STEPHENS L. BLAKELY for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

In the year 1922 the General Assembly passed an act defining and regulating the business of dry cleaning

and dyeing in cities of the first and second class. Acts 1922, chapter 125, page 364; Kentucky Statutes, sections 2741g-1 to 2741g-37 inclusive. The title of the Act is:

"An act defining and regulating the business of dry cleaning and dyeing in cities of the first and second class, and providing for the construction, maintenance, and inspection by the state fire marshal of dry cleaning and dyeing buildings and establishments, and providing ways and means for enforcing this act, and penalties for the violation thereof."

Sections 1, 2, 3, 4, 5, 6, 7, and 8, are as follows:

"1. That for the purpose of this act a dry cleaning or dyeing business is defined to be the business of cleaning, sponging or dyeing cloth, clothing, feathers or any sort of fabrics or textiles by the use of carbon bisulphide, gasoline, naphtha, benzine, benzol, or other light petroleum, or coal-tar products or inflammable liquid, or cleaning, sponging, or dyeing by process known as dry cleaning and dyeing where inflammable volatile substances are used. Sponging shall be the removal of dirt, greases, etc., by local application of inflammable liquid. Any person, firm or corporation carrying on the business of sponging as above defined, solely or in connection with, or as a part of any other business, shall be deemed a dry cleaner, and, as such, subject to the provisions of this act.

"2. That no person, firm or corporation shall advertise as dry cleaners and dyers, or either, as defined in section 1 thereof, until such person, firm or corporation shall have made application to the state fire marshal for permission to engage in such business and paid the fees as hereinafter provided.

"3. That no room or structure shall be used for the business of dry cleaning or dyeing, as above defined, or for the storage of inflammable or volatile substances for use in such business, until an application for permission to do so shall have been filed with and approved by the state fire marshal of the state of Kentucky.

"4. That upon the filing of every such application, the applicant shall pay to the state fire marshal a filing and inspection fee of twenty-five ($25.00) dollars.

"5. That when any application is filed with the state fire marshal, and the fee paid as above mentioned, the state fire marshal, his deputies or assistants, shall make an inspection of such room or structure; and if the same conforms to the requirements of law and rules which may be prescribed by the state fire marshal, for such places, then the state fire marshal shall issue a permit to the applicant for the conduct of such business, which permit shall extend until the first day of January next after the date of the issuing of same.

"6. That the permits may be renewed at any time within thirty days after the termination thereof by the filing of an application for such renewal and the payment of a fee of five dollars therefor; provided the applicant for such renewal permit has complied with the provisions of this act, and with the laws of the state of Kentucky.

"7. That all permits may be exhibited for inspection to the state fire marshal, or any of his deputies or assistants, whenever requested and no one except the person, the firm or corporation to whom the same are issued shall have the right to operate a business or establishment under any permit.

"8. That permit may be refused, suspended, or revoked by the state fire marshal for fraud in procuring the same, or for a violation of any law of the state of Kentucky."

Sections 9 to 29 inclusive contain numerous restrictions fixing the height and character of the building in which the business may be conducted, prohibiting sewer connections, providing for ventilation and fire extinguishing equipment, the protection of steam or hot water pipes, the specific kind of machinery to be used and the manner of its construction, compelling the return of liquid to storage tanks at the close of the day's operation, requiring the building to be heated by steam or hot water, and containing other restrictions and conditions too numerous to mention. Section 30 excludes buildings then in use unless reconstructed, rebuilt or repaired. Section 31 requires the building to conform to the act where the business therein has been abandoned for a period of three months. Section 32 provides for the inspection of the

buildings, apparatus, etc., by the state fire marshal or his assistants. Section 33 is as follows:

"That any person or persons being the owner, occupant, lessee, or agent, who shall violate any of the provisions of this act or fail to comply therewith, or who shall violate or fail to comply with any order or regulation made thereunder within ten days, or who shall build in violation of any detailed statement of specifications or plans submitted and approved thereunder, shall severally for each and every such violation and noncompliance respectively, be guilty of a misdemeanor, and, upon conviction thereof, shall be fined for the first offense not less than ten dollars nor more than two hundred dollars, and for the second offense shall be fined not less than $50.00 nor more than $500.00 and imprisoned in a county jail or workhouse not to exceed six months."

Section 34 makes it the duty of the state fire marshal, his deputies and assistants, to enforce the provisions of the act. Section 35 provides that all fees, penalites or forfeitures collected or paid into the state treasury shall be credited to the maintenance of the office of the state fire marshal. Section 36 provides for other safety regulations, and section 37 restricts the provisions of the act to cities of the first and second class.

This suit was brought under the Declaratory Judgment Act for the purpose of testing the validity of section 2 as applied to A. P. Ammon, doing business under the firm name and style of the Brown Dry Cleanery. The facts are these: Ammon is engaged in business in the city of Covington under the firm name and style of the Brown Dry Cleanery. While he repairs and presses clothing and advertises as a dry cleaner and dyer, he does not do any dyeing or dry cleaning or any of the things defined as dry cleaning by section 1 of the act. On the contrary, he merely receives clothing for dyeing and dry cleaning and transmits it to some other person or plant equipped with the necessary machinery and material for doing the work. After the clothing has been returned, he delivers it to his customers.

The challenged section provides that no person, firm or corporation shall advertise as dry cleaners and dyers, or either, as defined in section 1 thereof, until such person, firm or corporation shall have made application to the

state fire marshal for permission to engage in such business and paid the fees as thereinafter provided. The section is susceptible of only two constructions. It either applies to such persons as advertise that they themselves are actually engaged in the business of cleaning and dyeing, or to all persons who advertise as cleaners and dyers regardless of whether they do the work themselves or through others. If the first construction be adopted, appellee is not included and should not be required to pay the fee. If the second construction is proper, appellee is included and the question at once arises whether or not the requirement is valid as applied to him. The provision can not be sustained on the ground that it was enacted to prevent false advertising. In the first place an advertisement that one is a cleaner and dyer is not necessarily false or misleading merely because he does the work through another and not at an establishment owned and conducted by him. In the next place a statute against false advertising should be general in its character and can not be sustained where it is confined to one particular business to the exclusion of all others.

It remains to determine whether the provision can be sustained on some other ground. No right of the citizen is more valuable than the right to earn his livelihood in any lawful occupation, and this right is protected alike by the federal and state Constitutions. Allgeyer v. State of Louisiana, 165 U. S. 588, 17 Sup. Ct. 427, 41 L. ed. 382, 6 R. C. L. 260; Lawton v. Stewart Dry Goods Co., 197 Ky. 394, 247 S. W. 14, 26 A. L. R. 686. A necessary incident of this right is the further right to advertise one's business in any lawful and proper way. Of course, the right to carry on a lawful business is subject to regulation under the police power. That power, however, is not unlimited. The rule is that in order to sustain legislative interference with the business of the citizen the court must be able to see that the act tends in some degree to promote the public health, morals, safety or welfare. In every case the means adopted must be reasonably necessary to accomplish that purpose and should not be unduly oppressive upon the citizen. The determination of the legislature as to these matters is not conclusive, but is subject to the supervision of the courts, and if the above prerequisites are wanting, a law imposing unreasonable restrictions on a lawful occupation will be held void. Tolliver v. Blizzard, 143 Ky. 773, 137 S. W. 509; Lawton v.

Steele, 152 U. S. 136, 38 L. ed. 388, 14 Sup. Ct. 499. The purpose of the act in question is to regulate the places and manner of carrying on the business of dry cleaning and dyeing in such a way as to prevent the destruction of life and property by fire. In other words, it is purely a police measure enacted for the public safety. As appellee does not do any dyeing or cleaning himself, his business is in no wise dangerous to the public. As his place of business is not constructed and equipped as required by the act, he can not secure a permit to do business under the act even though he files the necessary application and pays the inspection fee of $25.00. That being true, he pays the inspection fee not for the purpose of acquiring the right to conduct the business, but solely for the privilege of advertising his business. This is conceded, but it is insisted that the provision is essential to the enforcement of the act. It is true that if all persons who advertise as dry cleaners and dyers pay the inspection fee the fire marshal will have before him a list of those engaged in the business and the task of inspection will be rendered less difficult. It must not be overlooked, however, that the act is confined to cities of the first and second class. Necessarily, the number of those engaged in the business is limited and the very fact that they advertise will afford the fire marshal and his assistants a ready means of determining whether or not they are conducting their business in violation of the statute. In the light of these facts it is at once apparent that the requirement in question is not reasonably appropriate or necessary for the enforcement of the act, and equally apparent that the exaction of an inspection fee of $25.00 merely for advertising one's business, coupled with the severe penalties that follow its nonpayment, is too burdensome a contribution to require of one whose business is not dangerous in order that the act may be enforced as to others who come within its provisions. On the whole, we conclude that the provision as applied to appellee and other persons similarly situated is unreasonable and void.

It follows that the circuit court did not err in so holding.

Judgment affirmed. Whole court sitting.