## Great Atlantic & Pacific Tea Co. v. Kentucky Tax Commission et al.

March 21, 1939.

CARROLL & McELWAIN for appellant.

HUBERT MEREDITH, Attorney General, and A. E. FUNK, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

In this case we are called upon to determine whether Chapter 26 of the Acts of the Extraordinary Session of the General Assembly of 1934, as amended in 1936 (3d Ex. Sess. c. 11), is valid. The Act imposes a license tax on retail merchants, graduated according to the number of stores operated in this state. Section 5 of the 1934 Act divided merchants into five classes for the purpose of assessing annual license fees and provided that the fees should be as follows:

"(1) Upon one store the annual license fee shall be two ($2.00) dollars for each such store.

"(2) Upon two stores or more, but not to exceed ten stores, the annual license fee shall be Twenty ($20.00) Dollars for each such additional store.

"(3) Upon each store in excess of ten, but not to exceed twenty-five, the annual license fee shall be Fifty ($50.00) Dollars for each such additional store.

"(4) Upon each store in excess of twenty-five, but not to exceed fifty, the annual license fee shall be One Hundred ($100.00) Dollars for each such additional store.

"(5) Upon each store in excess of fifty the annual license fee shall be One Hundred and Fifty ($150.00) Dollars for each such additional store."

At the Third Extraordinary Session of the General Assembly of 1936, Section 5 of the 1934 Act was repealed and reenacted (Kentucky Statutes 1936, Section 4202a-17) so as to read as follows:

"Every merchant establishing, operating or maintaining one or more stores, stands or places of business within this State, shall pay annually the license fee hereinafter prescribed for the privilege of opening, establishing, operating or maintaining

such stores, stands or places of business. The license fees herein prescribed shall be as follows:

"(1) On one store the flat sum of two dollars ($2.00);

"(2) On all chains of more than one, but not more than five stores, two dollars ($2.00) plus twenty-five dollars ($25.00) for each said store in excess of one;

"(3) On all chains of more than five, but not more than ten stores, one hundred and two dollars ($102.00) plus fifty dollars ($50.00) for each said store in excess of five;

"(4) On all chains of more than ten, but not more than twenty stores, three hundred and fifty-two dollars ($352.00) plus one hundred dollars ($100.00) for each said store in excess of ten;

"(5) On all chains of more than twenty, but not more than fifty stores, one thousand three hundred and fifty-two dollars ($1,352.00) plus two hundred dollars ($200.00) for each store in excess of twenty;

"(6) On all chains of more than fifty, seven thousand three hundred and fifty-two dollars ($7,352.00) plus three hundred dollars ($300.00) for each said store in excess of fifty." Section 1.

The Act as amended is now Section 4202a-13 to and including Section 4202a-24, Carroll's Kentucky Statutes, 1936 Edition. By Chapter 66, Acts of 1938, the Act was further amended by eliminating the tax of $2 on single stores, but this amendment has no bearing on this appeal.

On July 1, 1936, the appellant owned and operated 200 stores in Kentucky, and it paid, under protest, to the Auditor of Public Accounts, $52,352, the amount of the tax due under the Act as amended. On November 6, 1936, it brought an action in the Franklin circuit court under the Declaratory Judgment Act, Section 639a—1 et seq., Civil Code of Practice, against the members of the Kentucky Tax Commission, the Attorney General, and the Auditor of Public Accounts, asking that Section 5 of the 1934 Act, as amended by Section 1 of the 1936 Act, be declared unconstitutional and void, and that an order be directed to the Auditor of Public Accounts requiring him to issue his warrant on the State Treasury in favor of the plaintiff in the sum of $52,352.

The petition was in five paragraphs. In paragraph 1 the plaintiff alleged that it was a merchant as defined in Section 1 of the Act of 1934 (Kentucky Statutes 1936, Section 4202a-13), and was engaged in the business of selling goods, wares, and merchandise, and particularly food stuffs, in various stores in the state of Kentucky, and that on July 1, 1936, it was the owner and operator of 200 stores. It alleged that there were other merchants in the state of Kentucky having larger gross sales and gross receipts than the plaintiff, and, also having larger net receipts and net income than the plaintiff, who, by virtue of the fact that they owned and operated only one store within the state of Kentucky, paid an annual license tax under the act of only $2; that Section 5 of the Act of 1934, as amended by Section 1 of the Act of 1936, constituted an unreasonable, arbitrary, and unlawful classification and discrimination in favor of those merchants operating a single store or operating only a few stores; that the classification of merchants, as defined in the Act, into the five groups named therein was arbitrary, unreasonable, and capricious; and that Section 5 of the Act as amended was unconstitutional and in contravention of the provisions of the Constitution of the state of Kentucky, and particularly Sections 1, 2, 13, and 26 of the Bill of Rights thereof, and also Sections 59, 171 and 181a thereof. Paragraph 2 alleged that Section 5 of the Act as amended is unconstitutional in that the rates of taxation provided therein are arbitrary and unreasonable and unjustly discriminatory against the appellant as a merchant owning and operating more than 50 stores in favor of other merchants owning and operating a single store or less than 50 stores. Paragraph 3 alleged that Sections 5 and 12 of the Act as amended (Kentucky Statutes 1936, Sections 4202a-17, 4202a-24) are unconstitutional in that the taxes therein provided for are unreasonable, arbitrary, and confiscatory as applied to the plaintiff and all other merchants owning and operating more than 50 stores within the state of Kentucky. Paragraph 4 charged that Section 2 of the amendatory act, repealing the credits theretofore allowable against the merchants license tax, was invalid as constituting double taxation against the appellant. Paragraph 5 sought the recovery of the sum of $52,352 which had been paid by the plaintiff on July 1, 1936.

On March 11, 1937, an amended petition was filed in

which it was alleged that the plaintiff had operated its stores in the state of Kentucky for the fiscal year ending February 28, 1937, at a loss. On September 6, 1937, a second amended petition was filed showing that plaintiff had paid the further sum of $49,652, on account of the merchants license tax, on July 1, 1937, and the recovery of this sum was sought. On February 19, 1938, a third amended petition was filed amending paragraph 3 of the original petition. It was alleged that aside from the plaintiff, the Kroger Grocery & Baking Company was the only other merchant owning and operating more than 50 stores within the state of Kentucky; that for the years 1935 and 1936 the Kroger Grocery & Baking Company suffered a net loss from the operation of its stores in Kentucky; and that the merchants license tax was unreasonable, arbitrary, and, confiscatory as to both the plaintiff and the Kroger Grocery & Baking Company, which were the only merchants within the classification. Demurrers to the petition as amended and each paragraph thereof were sustained, and, the plaintiff having declined to plead further, its petition as amended was dismissed. The circuit court adjudged that Section 5 of the challenged act was not unconstitutional; that it did not provide an unreasonable or an arbitrary classification of merchants for the purpose of taxation; and that the tax was not confiscatory.

On this appeal, four grounds are urged for a reversal of the judgment: (1) Section 5 of the 1934 Act as amended is unconstitutional as being an unreasonable and arbitrary classification of those engaged in the trade or occupation of a merchant for the purpose of taxation; (2) it is unconstitutional in that the taxes therein imposed are unreasonable, arbitrary and confiscatory as applied to the appellant and all other merchants owning and operating more than 50 stores within the state of Kentucky; (3) it is unconstitutional in that the rates of taxation are arbitrary and unreasonable and unjustly discriminatory against the appellant as a merchant owning and operating more than 50 stores in favor of other merchants owning and operating a single store or less than 50 stores; and (4) Section 12 of the 1934 Act as amended (Kentucky Statutes 1936, Section 4202a-24), repealing credits theretofore allowable against the merchants license tax, is invalid as constituting double taxation against the appellant, particularly in view of Sec-

tion 4189-7, Kentucky Statutes 1930, allowing similar credits against the corporate license tax.

Since we have concluded that ground 1 must be sustained, it is unnecessary to consider the other grounds relied upon for a reversal of the judgment further than to say that in our opinion paragraphs 2 and 3 of the petition each stated a cause of action and the demurrers thereto should have been overruled, and upon the filing of an answer traversing the averments thereof proof should have been heard on the issues of discrimination and confiscation.

The increase in sales of merchandise through chain store systems during recent years has given rise to much debate pro and con as to the economic and social effects of such methods of merchandising and to much legislation, the obvious purpose of which was to curb the growth of chain store systems, and in many instances to destroy such systems already established. Those opposed to chain stores believe they tend toward monopoly, and eventually will drive the local merchant out of business; that local merchants and their employees have a greater interest in local affairs than transients, and are essential to the stability of local communities and, thus, important to the welfare of the state. By some it is asserted that mere bigness in business is a menace to the public welfare and that regulation and control of chain store systems is authorized as in the public interest. On the other hand, it is said that the ownership of multiple units is beneficial to the public in that it has met an economic need and has solved to some extent the problem of reducing the cost of distributing goods, and has narrowed the spread between the cost of production and the price to the consumer, and, thus, has enabled persons in the lower income groups to obtain more goods at a lower price and to raise their standard of living. Be this as it may, the General Assembly, in enacting the statute under consideration, did not assume to act under the police power or to declare the public policy of the state on the subject, and, until it does so, we think it would be improper for the courts to express an opinion as to what that public policy should be. The statute cannot be justified under our Constitution as a revenue measure, and should not be approved as a valid exercise of the police power when, on its face, it refutes the suggestion that the Legislature was attempting to promote the public

welfare rather than to raise revenue. In delineating the constitutional limitations placed upon the Legislature in the field of taxation, a different approach is authorized where the tax measure is induced by social rather than fiscal motives. The statute in question is purely a revenue measure, and must be sustained as such, or not at all. Whether the classification could be justified if the statute were an exercise of the police power is a question therefore which is not before us.

Section 2 of the 1934 Act (Kentucky Statutes 1936, Section 4202a-14) requires all taxes collected under its provisions to be covered into the state treasury and deposited in the General Expenditure Fund. The Act contains the following emergency clause:

"Whereas, the present State revenues will not meet the immediate needs for the maintenance and developments of the State government and its agencies and the State's credit is threatened, an emergency is declared to exist and this Act shall become a law and be effective upon its passage and approval by the Governor." Section 13.

The title of the amendatory Act of 1936 stated that it was an act relating to revenue and taxation, and the act contained an emergency clause similar to the one in the original act. There is no intimation in the act as amended that the Legislature, by the taxes imposed, intended to remedy any evils in the business of merchandising through multiple units. If such evils exist, the Legislature may, within the constitutional limitations, regulate the business, but a purpose on its part to levy taxes and regulate business under the police power should not be read into an act which shows on its face that it is strictly a revenue measure. As was said in Liggett Co. v. Lee, 288 U. S. 517, 53 S. Ct. 481, 485, 77 L. Ed. 929, 85 A. L. R. 699:

"To attribute such a covert, hidden, and indirect purpose to those who passed the statute is, in effect, to charge the lawmakers with saying one thing and meaning another."

In City of Louisville v. Pooley, 136 Ky. 286, 124 S. W. 315, 316, 25 L. R. A., N. S., 582, a city ordinance imposed a license tax of $1,000 for engaging in the business of lending money on chattel mortgages and $1,000 for engaging in the business of lending money on wages. The question of classification was not involved, but the

ordinance was held to be invalid because the tax imposed was unreasonable and confiscatory. The city attempted to sustain the ordinance on the ground that the taxing power could be used to prohibit the small loan business, but this court, after stating that the business of lending money on salaries or chattels is a legitimate business, said:

> "It may be, however, and doubtless is true, that such companies frequently take advantage of the needy circumstances of those desiring to borrow, and exact a rate of interest far in excess of that allowed by law. If this be the case, we take it that such companies should be regulated by statute so as to remedy the evil. The taxing power should not be used to drive them out of existence."

The challenged act being strictly a revenue measure, the question for decision is whether, under our Constitution as interpreted by the decisions of this Court, the classification of merchants into groups based on the number of stores operated for the purpose of taxation is arbitrary or unreasonable. Section 181 of our Constitution authorizes the Legislature to impose occupational taxes for the purpose of raising revenue, to tax some occupations and exempt others, and to impose different rates of taxation on different occupations. Persons engaged in the same occupation may be classified and a different license tax imposed upon each class, provided the classification is made upon a natural and reasonable basis. Williams v. City of Bowling Green, 254 Ky. 11, 70 S. W. (2d) 967; Commissioners of Sinking Fund v. Weis, 269 Ky. 554, 108 S. W. (2d) 515; City of Danville v. Quaker Maid, 211 Ky. 677, 278 S. W. 98, 43 A. L. R. 590; Commonwealth v. Payne Medicine Company, 138 Ky. 164, 127 S. W. 760; Hager v. Walker, 128 Ky. 1, 107 S. W. 254, 32 Ky. Law Rep. 748, 15 L. R. A., N. S., 195, 129 Am. St. Rep. 238; City of Covington v. Dalheim, 126 Ky. 26, 102 S. W. 829, 31 Ky. Law Rep. 466; City of Louisville v. Sagalowski, 136 Ky. 324, 124 S. W. 339, 136 Am. St. Rep. 258. In Gordon v. City of Louisville, 138 Ky. 442, 128 S. W. 327, 328, after stating that the problem of working out absolute equality in taxation is one that has never been solved, the court said:

> "Acknowledging the existence of this remediless condition, the efforts of courts have been to relieve it as much as possible by requiring taxing authori-

ties to make as little discrimination as conditions will permit. In this state we recognize as valid the imposition of license taxes based upon three theories; one being a uniform tax upon all persons engaged in the same business without any reference to the amount of business done, another that levies a uniform tax upon the volume of business done without changing it in the proportion that the business increases, the per cent. being the same whether there is realized from the business $1,000 or $100,000 per annum. And yet another is the division of a general class, as in this case and the Strater Case [Strater Bros. Co. v. Com., 117 Ky. 604, 78 S. W. 871, 25 Ky. Law Rep. 1717] into separate classes according to the volume of business done, and the imposition of a different tax upon each division into which the class is divided.''

It will be noted that the license taxes imposed by the statute under consideration bear no relation to the *volume of business* done, but are arbitrarily fixed in accordance with the *number of stores* operated by a single owner.

It is alleged in the petition that operators of chain stores having fewer than 50 stores in Kentucky do a larger volume of business than appellant, and that there are merchants owning only one store in Kentucky who do a larger volume of business in the state than appellant does in its 200 stores. Appellees seek to justify the classification on alleged differences other than volume of business done. Somewhat similar statutes have been passed in a number of states, and in a majority of the cases in which the question has been raised their validity has been sustained. A Georgia statute, imposing a license tax of $50 for each store in a chain consisting of more than five stores, was declared invalid by the Supreme Court of Georgia in F. W. Woolworth Company v. Harrison, 172 Ga. 179, 156 S. E. 904, and Harrison v. National Biscuit Company, 172 Ga. 285, 157 S. E. 666. In City of Douglas v. South Georgia Grocery Company, 180 Ga. 519, 179 S. E. 768, 99 A. L. R. 700, a city ordinance classifying Grocery Stores in accordance with the number owned by one person and the methods of operation was declared void. In the Great Atlantic & Pacific Tea Company v. Doughton, 196 N. C. 145, 144 S. E. 701, the Supreme Court of North Carolina declared invalid a statute imposing on merchants a li-

cense tax graduated according to the number of stores owned because it contained an unreasonable and arbitrary classification. Later a chain store tax was sustained. Great Atlantic & Pacific Tea Company v. Maxwell, 199 N. C. 433, 154 S. E. 838. Other cases in which such a tax has been sustained are State Board of Tax Commissioners v. Jackson, 283 U. S. 527, 51 S. Ct. 540, 75 L. Ed. 1248, 73 A. L. R. 1464, 75 A. L. R. 1536; Fox v. Standard Oil Company, 294 U. S. 87, 55 S. Ct. 333, 79 L. Ed. 780; Great Atlantic & Pacific Tea Company v. Grosjean, 301 U. S. 412, 57 S. Ct. 772, 81 L. Ed. 1193, 112 A. L. R. 293; Smith Co. v. Fitzgerald, 270 Mich. 659, 259 N. W. 352; Midwestern Petroleum Corporation v. State Board of Tax Commissioners, 206 Ind. 688, 187 N. E. 882, 191 N. E. 153; Penney Company v. Diefendorf, 54 Idaho, 374, 32 P. (2d) 784; Safeway Stores v. City of Portland, 149 Or. 581, 42 P. (2d) 162; Hurt v. Cooper, 130 Tex. 433, 110 S. W. (2d) 896, 897; Id., Tex. Civ. App., 113 S. W. (2d) 929; Great Atlantic & Pacific Tea Company v. Spartanburg, 170 S. C. 262, 170 S. E. 273.

An examination of the cases sustaining the validity of such taxes discloses that in most of them it was stated the uniformity provision of the state constitution applied only to ad valorem taxes on property, and had no application to license fees, and, further, that the statute was enacted under the police power and was not purely a revenue measure. The Supreme Court of the United States in the Jackson case, in a five to four decision, reversed a lower Federal Court, and held the Indiana statute violated neither the Fourteenth Amendment to the Federal Constitution, U. S. C. A., nor Article 10, Section 1, of the Indiana Constitution, requiring a uniform and equal rate of assessment and taxation, which the Supreme Court of the state had declared to be applicable only to the assessment made under a general levy and not to occupation or license taxes. The Indiana statute imposed occupational taxes upon those establishing, operating, or maintaining one or more stores within the state under the same general management, supervision, or ownership, the amount of the tax per store being graduated according to the number of stores under a single ownership and management, the tax varying from $3 for one store up to $25 for each additional store in excess of twenty. In the Jackson case the Supreme Court treated the act as a revenue measure, but when the question of its validity, under the State Con-

stitution, was before the Supreme Court of Indiana in Midwestern Petroleum Corporation v. Board of Tax Commissioners, supra, that court considered the statute on the theory that it was an exercise of the police power and was designed and intended to discourage chain stores and encourage and protect local individuals, and that the Legislature, by the statute, had attempted to correct or prevent what, in its judgment, was an evil or an obstacle to a greater public welfare. In Smith Company v. Fitzgerald, supra, the Supreme Court of Michigan, in sustaining the validity of the Michigan chain store tax, said [270 Mich. 659, 259 N. W. 358]: "The power to tax involves the power to destroy, and the power to destroy may defeat and render useless the power to create."

Similar statements may be found in opinions of the Supreme Court of the United States, beginning with the one in McCulloch v. Maryland, 4 Wheat, 316, 4 L. Ed. 579. See, also, Fox v. Standard Oil Company, supra; Stewart Dry Goods Company v. Lewis, 294 U. S. 550, 55 S. Ct. 525, 79 L. Ed. 1054.

The Constitution of Kentucky has never been so construed by this court. As pointed out in Martin v. Nocero Ice Cream Company, 269 Ky. 151, 106 S. W. (2d) 64, Section 181 of the Constitution must be read in connection with the Bill of Rights, and a license tax which amounts, in effect, to confiscation of the taxpayer's property or the suppression of a legitimate occupation is forbidden. Of course, the state may, under the police power, regulate occupations that are affected with a public interest, but that power must be exercised so as not to be unduly oppressive. Rawles v. Jenkins, 212 Ky. 287, 279 S. W. 350; Ware v. Ammon, 212 Ky. 152, 278 S. W. 593; Lawton v. Stewart Dry Goods Company, 197 Ky. 394, 247 S. W. 14, 26 A. L. R. 686. Only certain occupations which are subject to regulation under the police power may be taxed to the point of prohibition. Southern Lines Linen Supply Company v. City of Corbin, 272 Ky. 787, 115 S. W. (2d) 321; Commonwealth v. McCray, 250 Ky. 182, 61 S. W. (2d) 1043.

While the provisions of Section 171 of our Constitution, requiring taxes to be equal and uniform, apply in their fullness only to direct taxation of property, yet the principle of equality and uniformity must be observed in imposing license and occupation taxes. The

uniformity provision does not prevent the classification of businesses, trades, professions or occupations, and the taxation of different classes at different rates, but the tax must be uniform on all subjects within the class to which it is applied, and the classification must be made according to natural and well-recognized lines of distinction. The difference upon which the classification is based must be substantial. Commissioners of Sinking Fund v. Weis, supra, Weyman v. City of Newport, 153 Ky. 487, 156 S. W. 109. The principle of equality and uniformity in taxation is one of the corner stones of our Constitution, and has been jealously guarded by the decisions of this Court in applying it, not only to statutes levying a direct tax on property, but to statutes and municipal ordinances imposing occupation taxes. Hager v. Walker, 128 Ky. 1, 107 S. W. 254, 32 Ky. Law Rep. 748, 15 L. R. A., N. S., 195, 129 Am. St. Rep. 238; Strater Brothers Tobacco Company v. Commonwealth, 117 Ky. 604, 78 S. W. 871, 25 Ky. Law Rep. 1717; Schuster & Co. v. City of Louisville, 89 S. W. 689, 28 Ky. Law Rep. 588.

The supposed points of difference between the owner of multiple units and the owner of a single store, which appellees contend justify the classification made in the Act, may be summarized as follows: Abundant capital, superior management, lower operating costs, greater efficiency in purchasing, buying for cash and thereby obtaining cash discounts, warehousing of goods and distributing same from a single warehouse to numerous stores, and cheaper advertising. These same points of difference appear between the owners of independent units. One owner has an abundant supply of capital; another a limited supply. One buys for cash and obtains cash discounts; another buys on credit. One is skillful in buying; another is unskillful. One operates his business on the cash and carry plan, while another extends credit and maintains a delivery service. Innumerable other points of difference could be pointed out. No two merchants conduct their business on exactly the same plan. It is obvious that the differences relied on as a basis for the classification are not peculiar to a group of stores under unified management or ownership. Skillfulness in buying and efficiency in management are personal attributes, regardless of whether the merchant owns one or more stores. Likewise the quantity of capital employed and the advantages flowing therefrom are not dependent upon the number of stores

owned and operated. They arise from the size of the business and not from the number of stores. A classification of a business, based on differences in number only, is without substance and does not have a reasonable relation to the object of the taxing act, which is to raise revenue.

It has been consistently held by this court that mere differences in details in the manner of conducting a business are not sufficient to justify a classification for the purpose of taxation. In Commonwealth v. Payne Medicine Company, 138 Ky. 164, 127 S. W. 760, a statute imposing a license tax on persons engaged exclusively in the business of selling patent medicine, while exempting merchants and druggists who sold such medicine in connection with other articles, was held unconstitutional and void. In City of Covington v. Dalheim, 126 Ky. 26, 102 S. W. 829, 31 Ky. Law Rep. 466, it was held that an ordinance imposing a tax on grocers who used delivery wagons, and not on other grocers, was void. In City of Danville v. Quaker Maid, 211 Ky. 677, 278 S. W. 98, 43 A. L. R. 590, the city enacted an ordinance imposing a license tax on grocery stores. The ordinance divided the stores into three classes: (1) Regular service grocery stores; (2) cash and carry grocery stores, not self-service; (3) self-service cash and carry grocery stores, and a different license fee was imposed on each class. The enforcement of the ordinance was enjoined on the ground that it was discriminatory and not uniform. This court said:

"The business of the appellee is to sell groceries of the same kind, character, quality, quantity, and for approximately the same price as those of the ordinary grocery store. The only difference between the business of appellee and that of the ordinary grocery is that appellee extends credit to no one and makes no deliveries. But this difference in this detail of conducting the business affords no reasonable ground for classifying appellee on a basis for taxation purposes different from that of the ordinary grocery store."

In Commissioners of Sinking Fund v. Weis, 269 Ky. 554, 108 S. W. (2d) 515, 516, an ordinance of the City of Louisville imposed a license tax upon "Every person, firm or corporation engaged in the business of selling furniture, household goods or wearing apparel, on a

strictly installment plan and operating a regular installment business.''

Other merchants, the major part of whose receipts was not a result of an installment business, were exempt, as were merchants employing installment sales for other articles not enumerated. The attempted classification was held to be unreasonable and the tax invalid. This court said:

"This license tax must be regarded as a revenue measure. It seems to us that the singling out of the business of selling necessities for special licensing savors of iniquity rather than of reason. But the controlling factor in the judicial determination of validity is that of logical considerations of uniformity and equality. Here is a classification of business according to the methods of operation—as between the method of ordinary merchants and the installment plan. Then those following the latter plan are divided between those merchants who handle everything but house furnishings and wearing apparel and those who sell those necessities. The first class are exempt. The second, limited class, are taxed. * * * It seems to us this discrimination bears no reasonable or just relation to the act in respect of which the classification has been made; that it is arbitrary and without a reasonable basis.''

In the case before us the tax imposed is not a tax upon the privilege of operating any particular kind of store, but is a tax upon the privilege of operating more than one store under one management. The taxes bear no relation to the volume of business, nor do the advantages, alleged to attach to multiple store operation, such as abundant capital, quantity buying, buying for cash and skill in buying, bear any relation to the number of units operated in any particular group.

In final analysis the advantages claimed depend upon volume of business and skill in management, and these elements are not peculiar to the ownership of multiple units. The record before us does not disclose any substantial difference between the business conducted by a person owning one store and one owning two or more stores. The difference, if any, is only in detail, and not in substance. Approval of the classification attempted by the Legislature would open wide the door for discriminatory and punitive taxation, and

the beneficiary today of such legislation would likely be the victim of similar legislation at some future date.

The principle of equality and uniformity which is imbedded in our Constitution and in the decisions of this court should be jealously preserved as a safeguard for all alike, and only where the public welfare is clearly involved should the power to tax be exercised for the purpose of regulating or prohibiting an occupation under the police power. We conclude that the classification made in the act under consideration is not a natural one, but is unreasonable and arbitrary, and that Section 5 of the Act, therefore, is invalid.

The judgment is reversed, with directions to overrule the demurrer to the petition as amended.

Whole Court sitting.

Cammack and Fulton, J. J., dissenting in part.

Cammack, Justice (dissenting in part).

The majority opinion deals primarily with the first of the appellant's four grounds for urging that the judgment of the trial court should be reversed. This contention is that Section 5 of the 1934 Act as amended is unconstitutional as being an unreasonable and arbitrary classification of those engaged in the trade or occupation of a merchant for the purpose of taxation. The opinion holds, ''that the classification made in the act under consideration is not a natural one, but is unreasonable and arbitrary, and that Section 5 of the Act, therefore, is invalid.''

I am unable to agree with this conclusion, since it does not appear to me, for the reasons hereinafter stated, that the method of classification employed is so palpably arbitrary that a reasonable mind can not accede to it. However, I concur in the view that Sections 2 and 3 of the petition stated a cause of action and that the demurrers thereto should have been overruled.

The effect of the majority opinion is that retail business establishments can not be classified in groups according to the number of such establishments operated in the state by one operator for the application of a graduated license tax. This conclusion was reached without regard to the rates of the license tax applied to the several groups of establishments in the numerical classification. It was unnecessary, therefore, to con-

sider the reasonableness of the scale of progression in the rates when applied to the number of stores as classified, and also the question as to whether any part of the rate structure was confiscatory.

While I realize that the method of classification employed in the so-called chain store license tax in question is not the best to be had, it does not seem to me to be an arbitrary classification for license tax purposes. A sound tax measure should have some definite relation to the income of the taxpayer, since taxes are paid from income or capital. But in all such matters the legislature has been given wide latitude in determining the subjects to be taxed and the manner in which the taxes are to be applied. We have been reluctant, however, to accept and apply the theory that the power to tax involves the power to destroy; but that concept involves the question of confiscation and not that of classification.

Progress has been made in recent years in the field of taxation toward the goal of levying and collecting taxes in accordance with the ability of the taxpayer to pay. Property taxes, which are as old as organized government, and which have long been condemned, have been giving way rapidly to the more modern types of business, income and excise taxes, of which the measure in question is one. This change, however, has not kept pace with the rapid changes in our social and economic structure which incidentally accounts in no small part for the confusion and chaos in the field of taxation. Kentucky has been in the forefront in attempting to adopt a more equitable tax structure, though she still has some way to go along that road.

The so-called chain store taxes, most of which involve methods of classification similar to that in the measure now under consideration, are to be found in about one-half of the states. In some instances these taxes, as pointed out in the majority opinion, have been upheld upon the ground that they come within the scope of police power regulatory measures. But, regardless of the ground upon which they have been placed or considered, they have been generally upheld by the state courts and by the Supreme Court. Many of these decisions set forth the reasons and considerations for holding that a definite relationship exists between the ability to pay taxes and the number of outlets in the field of retail business.

Therefore, for the reasons set out above, I do not think the method of classification employed in the license tax in question violates our requirements as to the uniformity and equality of tax measures. I am authorized to say that Judge Fulton concurs in this dissent.