**CITY OF LOUISVILLE et al.**

v.

**KOEHLER et al.**

Court of Appeals of Kentucky.

Jan. 22, 1954.

Harris W. Coleman, Frank W. Burke, Louisville, for appellants.

Joseph H. Hayse, Nellie S. Hayse, Louisville, for appellees.

MILLIKEN, Judge.

This is an appeal from a judgment of the Jefferson Circuit Court declaring void, confiscatory, arbitrary and unconstitutional so much of section 9(e) of Ordinance No. 83, Series 1950, as amended, of the City of Louisville, as imposes a minimum annual license fee of $250 upon antique dealers having no established place of business within the corporate limits of the City who exhibit and offer for sale their antiques at annual or semiannual shows. The judgment also enjoined the City from collecting any license fee in excess of the

$10 plus the 1% of net profits imposed upon merchants generally by the ordinance. The appellees have cross-appealed contending that they sued for and in behalf of itinerant vendors generally and not just as exhibitors at antique shows and that the ordinance should be declared unconstitutional and void as against all itinerant merchants.

Once or twice a year for many years, Mr. Bauer, one of the plaintiffs below, has held an antique show in Louisville, usually lasting about four days. Antique dealers from Louisville, this state and other states, rent booths or stalls at the shows and exhibit and sell their wares. The gross business done by an average exhibitor does not average $250 per show, and—so far as this record discloses—the net profit of an exhibitor has never amounted to $250.

Since the passage of the ordinance in question, every time Mr. Bauer has applied for a license to operate the show he has been warned by the City not to permit any exhibitors from outside the City to make any sale of merchandise unless they have paid the itinerant merchant fee of $250. The testimony of the exhibitors considered collectively is to the effect that they could not possibly participate in future shows if they must first procure the license.

The pertinent parts of the ordinance are:

"Section 9. The legislative body of the City of Louisville hereby finds that the following occupations are of such a nature as to require special regulation and supervision and therefore along with the occupational license fee imposed by other sections of this ordinance, the following minimum license fees are imposed on every person, corporation, association, etc., engaged in the business, occupation, calling or profession, of using, holding or exhibiting article named in this section who shall pay in advance into the Sinking Fund of the City of Louisville for each calendar (or) fiscal year the minimum license fee or fees herein set forth.
* * *

"(e). Itinerate Merchants: Every person or corporation who shall engage in, do, or transact any temporary or transient business in the City, for the sale of any goods, wares, or merchandise, and who, for the purpose of carrying on such business, shall hire, lease, use, or occupy any building or structure, motor vehicle, tent, car, boat or public room or any part thereof, including rooms in hotels, lodging houses, or in any street, alley or other public place, or elsewhere, for a period of less than one year for the exhibition of or sale of such goods, wares or merchandise, shall pay a minimum license fee for the privilege of doing said business in the City of $250.00.

"Every such person or corporation who has not been licensed for at least one year to sell or offer for sale any goods, wares or merchandise within the City, shall file with the Secretary-Treasurer an affidavit from the owner of the building, structure, etc., to be used by such applicant, showing for what period of time the property to be used by such applicant has been hired or leased by him, and no license shall be issued until such affidavit is filed, provided, however, the Secretary-Treasurer may issue a regular merchant's license to any such applicant upon the giving of a bond or security (in lieu of the aforementioned affidavit) in such amount as will in the opinion of the Secretary-Treasurer equal the amount of license fee required by this ordinance for a period of one year. Such bond shall provide that such amount shall be paid into the Sinking Fund in the event and at any time during the year that the Secretary-Treasurer shall receive sufficient evidence showing that it was applicant's intention to engage in or transact a transient business in the City.

"No person shall be exempt from the payment of the license imposed by this Section by reason of a temporary association with any local merchant,

dealer or trader, or by reason of conducting such temporary or transient business in connection with or as a part of the business in the name of any local merchant, dealer or trader. * * *

"The owner or operator of each of the businesses or occupations mentioned in this Section 9 shall make a return as required by Section 4 of this ordinance, and shall receive a credit thereon for the amount due on account of the minimum payment required, *but if the amount due under Section 1 of this ordinance does not exceed the minimum, there shall be no refund and it shall be considered that the entire minimum has been exhausted for the yearly privilege.*" (Emphasis ours.)

■ A municipality may, for a proper purpose, classify and distinguish between itinerant merchants and established merchants, or between businesses regularly established and those not regularly established. But this does not mean that they are subject to different and more onerous exactions than those applicable to residents, unless there is a reasonable basis for the distinction, such as a greater need for additional or more costly police regulation to prevent fly-by-night concerns from defrauding the public. McQuillin Municipal Corps., Vol. 9, Section 26.144, page 331.

Mr. Brumleve, the Secretary-Treasurer for license taxes for the Commissioners of the Sinking Fund, testified that during the entire period this ordinance has been in effect only four such licenses have been issued. He testified that many people applied—in fact, two or three a day—but that after he showed them the ordinance, they departed.

■ Section 9(e) of the ordinance must be interpreted in the light of the whole ordinance which is commonly known as the occupational license tax ordinance. Section 1 of the ordinance provides for a 1% withholding from wages and a 1% tax on annual net profits of a business operating in the City. The validity of the ordinance as a whole was sustained in City of Louisville v.

Sebree, 308 Ky. 420, 214 S.W.2d 248. Thus, licensees under Section 9(e) are to be credited the amount of their license fee upon the tax which would be assessed against them if they operated a business within the City for a period of a year or more, but would get no refund if the license fee exceeded the amount of the tax.

■ While Section 9(e) is worded as if it were a regulatory measure, no regulatory provisions are contained within it. It obviously is a revenue measure, an attempt to secure the payment of taxes by those operating a business from a fixed location for less than a year, comparable to those exacted from the operators of established businesses within the City and their employees. It is an ingenious attempt to make them bear their proportionate share of the costs of government.

■ The occupations or businesses covered by Section 9(e) may or may not be those customarily regulated by the police power, and only certain occupations subject to regulation by the police power may be taxed to the point of prohibition. Southern Lines Linen Supply Co. v. City of Corbin, 272 Ky. 787, 115 S.W.2d 321. In the case at bar, it is contended that the fee charged is prohibitory in its effect, but we do not need to decide this point because of our conclusion that the wide coverage of Section 9(e), which totally disregards the nature of the business affected, is evidence enough that it is essentially a revenue measure despite its licensing terminology, and, consequently, must be judged by the standards applicable to revenue measures.

■■ Section 9(e) really does not apply to itinerant merchants as such, but only to those merchants who sell or do business from a fixed location for a period of less than a year. If such a merchant were to operate a business for eleven months, for example, and made no profit, he would be subject to a license fee of $250, while another merchant in the same line of endeavor who managed to stay in business for a year without making a profit would owe no tax and not be out of pocket for the license to

do business. It appears clear to us that the purpose of the $250 licensing fee as required here is to secure the payment of taxes due under Section 1 of the ordinance levying the 1% on annual net profits, and is not required for the purpose of regulating or policing the licensee. The fact alone that a merchant is in business for less than a year is not a sound reason for placing him in a different classification for tax purposes than that occupied by his competitor who stays in business for more than a year. The difference upon which the classification is based must be substantial and upon a natural and reasonable basis. City of Danville v. Quaker Maid, Inc., 211 Ky. 677, 278 S.W. 98, 43 A.L.R. 590; Great Atlantic & Pacific Tea Co. v. Kentucky Tax Commission, 278 Ky. 367, 128 S.W.2d 581; Beavers v. City of Williamsburg, 306 Ky. 201, 206 S. W.2d 938. The fact that no part of the $250 license fee shall be returned in the event that the tax, if any, does not amount to that much, thus violates the principle of equality and uniformity of Section 171 of our Constitution which has been held applicable not only to legislation levying a direct tax on property but also to legislation imposing occupation taxes. Great Atlantic & Pacific Tea Co. v. Kentucky Tax Commission, 278 Ky. 367, 128 S.W.2d 581, and cases there cited.

It is our conclusion, therefore, that Section 9(e) is unconstitutional in so far as it violates the principle of equality and uniformity by failing to provide for a refund of the amount the $250 license fee exacted may exceed the amount of the tax actually incurred under Section 1 of the ordinance.

Because of the nature of the tax and the need of protecting the City from loss in its collection, we do not object to the requirement of a reasonable advance payment or security for payment from the classification of taxpayers designated in Section 9(e), so long as the net result taxwise to the classification under Section 9(e) is the same as it is to other classifications covered by the ordinance.

In view of our conclusion on the merits, we consider the question presented by the cross-appeal to be moot.

The judgment is affirmed.